UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.* JOHN KING, *et al.,* Plaintiffs, v. SOLVAY S.A., *et al.*, Defendants. | § § § § § § § § § | CIVIL ACTION H-06-2662 |

## ORDER

Pending before the court is a motion for a protective order filed by defendant Abbott Products, Inc., now doing business as Abbott Products LLC ("Abbott"), and formerly known as Solvay Pharmaceuticals, Inc. ("SPI") (collectively, "Solvay"). Dkt. 187. Having considered the motion, response, reply, and applicable law, the court is of the opinion that the motion should be GRANTED.

## I. BACKGROUND

This is a case involving alleged nationwide off-label promotion of three drugs, Aceon, Luvox, and AndroGel, alleged violations of the anti-kickback statute, and alleged retaliation against the relators, Tammy Drummond and John King (collectively, "Relators"), for questioning these practices. Relators filed a *qui tam* complaint under seal in 2002. Dkts. 188, 189. The allegations in the *qui tam* complaint led to investigations by the Attorneys General of Texas and Virginia, which subpoenaed records relating to the drugs. Dkt. 188. Eventually, the United States, Texas, Virginia, and numerous other states declined to intervene, and the case was unsealed.

The complaint is now on its sixth iteration, and the case has proceeded past the motion to dismiss stage. The parties are now attempting to commence substantive discovery. Relators assert

that they are entitled to obtain discovery relating to alleged "ongoing" fraud. Dkt. 189. Solvay seeks a protective order protecting it from allegedly unduly burdensome discovery and preservation demands from Relators relating to materials that Solvay claims are irrelevant to any of the factual allegations in the fifth amended complaint. Dkt. 188. Specifically, Solvay argues that the fifth amended complaint provides no basis for discovery of SPI's practices after 2006 or Abbott's practices with respect to former SPI products since Abbott acquired SPI in 2010. *Id.*

Solvay claims that Abbott is preserving over 2,500 email back-up tapes, over 56,000 network share back-up tapes, and vast portions of SPI's active network share drives, consisting of about 5 terabytes (TB) of data or roughly 500,000 individual folders. *Id.* This hold covers materials dating from the 1990s through 2010. *Id.* This hold covers 89 potential custodians, including 48 current Abbott employees and 41 former employees. Dkt. 188, Ex. 1. According to Abbott's director and senior counsel for electronic discovery and records management, a hold of all the electronic data for Abbott personnel who have some responsibility for AndroGel would require Abbott to allocate extra space on its server to preserve the materials. *Id.* The current emails of the users who would be subject to the hold would amount to approximately 4,803 GB or 4.8TB of data. *Id.* Over the course of one year, the emails subject to the hold would amount to approximately 39 million additional emails or 7,665 GB of data. *Id.* It could cost at least $480,300 to process the SPI emails Abbott is currently holding, and processing the additional emails resulting from a hold of Abbott emails could cost another $766,500. *Id.* Additionally, if contract attorneys were able to review 40 emails per hour, review of the current 1.8 million emails alone will cost $2.3 million, not including quality control, privilege logs, or production costs. *Id.* Processing the Abbott emails will cost substantially more.

Solvay seeks a protective order specifying that Solvay's discovery obligations (1) are limited to the time period relevant to the allegations of the fifth amended complaint and no later than December 31, 2007; (2) do not require preservation of material beyond February 7, 2008, the date of the last state subpoena; and (3) do not require preservation of material relating to post-acquisition conduct after February 16, 2010 (collectively, the "Discovery and Preservation Cut-Off Dates"). *Id.*

Relators contend that Solvay has failed to show good cause for the court to enter a protective order. Dkt. 189. Instead, Relators assert that Solvay makes sweeping generalizations about the possible burden that may be imposed if the case moves forward without a date restriction. *Id.* Relators additionally argue that Solvay's motion is merely an attempt to seek summary judgment so as to cut off liability at a certain point in time without actually presenting any summary judgment evidence. *Id.* Relators agree, however, that it is reasonable to decide on an endpoint for discovery and suggest that the endpoint be December 13, 2012, which is the date that the court held a hearing on this matter. *Id.* In the alternative, Relators state that they are willing to accept the court's suggestion that one or two depositions be taken to determine whether the discovery period should extend beyond the date of the Abbott acquisition. *Id.*

## II. Legal Standard

"Discovery matters are entrusted to the 'sound discretion' of the district court." *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994). Federal Rule of Civil Procedure 26(b)(1) broadly allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . [and for] good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1). However, under Rule 26(b)(2)(C), a court may limit discovery "if it determines that . . . the burden or expense of the proposed discovery

outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."

Under Rule 26(c)(1), a "court may, for good cause, issue an order" limiting discovery "to protect a party from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed. R. Civ. P. 26(c)(1). With regard to a protective order, the "burden is upon the movant to show the necessity of [a protective order's] issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (citations and quotations omitted).

### III. ANALYSIS

Solvay contends that the allegations of "ongoing" conduct are boilerplate rhetorical allegations supported only by the allegations that Abbott, which acquired Solvay in 2010, continues to employ some of the same people Relators claim engaged in wrongful conduct when they were employed by SPI ten years ago and documents that were produced to the Attorneys General of Texas and Virginia pursuant to subpoenas ("Attorney General Documents"). Dkt. 188. The Attorney General Documents go through December 31, 2001 for Luvox; December 31, 2002 for Aceon; and February 7, 2008 for AndroGel. *Id.* Solvay contends that documents that post-date the Discovery and Preservation Cut-Off Dates are not relevant or that discovery of these documents is not reasonably calculated to lead to the discovery of relevant admissible evidence. *Id.* Solvay also asserts that relators have not adequately alleged any conduct after the Discovery and Preservation Cut-Off Dates that caused false claims to be submitted, as the fifth amended complaint contains no specific factual allegations after 2006—which is well before any of the proposed Discovery and

Preservation Cut-Off Dates. *Id.* Solvay contends that the few generalized allegations of ongoing conduct are insufficient to justify the costs of preserving and reviewing records created after the Discovery and Preservation Cut-Off Dates. *Id.*

Relators contend that Solvay is, in reality, seeking summary judgment to cut off liability at a certain point in time. Dkt. 189. They argue that Solvay has not met its burden of showing good cause why a protective order should issue, as Solvay must enunciate specific reasons why it is entitled to a protective order, and it instead provides generalized allegations about what burden may be imposed if discovery proceeds as Relators request. *Id.* Relators assert that the court has already addressed the sufficiency of the pleadings in the motion to dismiss phase of this case, which has now passed. *Id.* Relators request that if the court were to revisit the sufficiency of their pleadings, that it keep in mind that Rule 9(b) does not require a relator to prove him or herself at explicit regular intervals, and they argue that limiting discovery to the time period about which Relators have personal knowledge would essentially immunize defendants for wrongful conduct occurring after they terminate whistleblowers due to the first-to -file rule. *Id.* Relators additionally assert that it is plausible that Abbott has continued to fraudulently market AndroGel since the acquisition of SPI because Abbott continues to employ individuals allegedly involved in the fraudulent marketing of AndroGel and continues to use the same types of marketing materials. *Id.* Finally, Relators contend that Solvay simply has not met its burden of showing that preservation of documents post-dating the Discovery and Preservation Cut-Off Dates is unduly burdensome because the affidavits provided as support are too generalized. *Id.*

The court finds that the allegations contained in the fifth amended complaint do not justify the broad timeframe for discovery that Relators seek. Relators contend that the following paragraphs in the fifth amended complaint allege a nationwide scheme that continues to this day:

> 3. . . . . From 1996 to 2002 *and beyond*, Solvay was, through and through, from its sales force to the highest echelons of management, deeply committed to selling Luvox, Aceon, and AndroGel by any means. Those means included not only illegal off-label promotions, but also the dissemination of medical misinformation, fraudulent misrepresentations and omissions, kickbacks, and bribes, all in order to obtain prescriptions and win access to government formularies and reimbursement. . . . .
> 457. Solvay . . . caused hundreds of thousands of false claims to be made, used and presented to the State of California from at least 1994 *to the present* . . . .
> 468. Solvay . . . caused hundreds of thousands of false claims to be made, used and presented to the State of Florida from at least 1994 *to the present* . . . .
> 480. Solvay . . . caused hundreds of thousands of false claims to be made, used and presented to the Commonwealth of Massachusetts from at least 1994 *to the present* . . . .
> 491. Solvay . . . caused hundreds of thousands of false claims to be made, used and presented to the State of Tennessee from at least 1994 *to the present* . . . .

Dkt. 154; Dkt. 189 (emphasis added).[1] Relators also point to paragraph 11 of the fifth amended complaint, which states that Abbott's acquisition of Solvay "resulted in substantial continuity of Solvay Pharmaceutical's business." Dkt. 154 ¶ 11; Dkt. 189. The court finds that these allegations are insufficient to justify the burden of allowing discovery "to the present." While the court determined that Relators' allegations were sufficient to survive Solvay's Rule 9(b) challenge, there

---

[1] The court notes that there is a paragraph numbering error in the fifth amended complaint which results in the numbering for paragraphs 425-479 being repeated. *See* Dkt. 154 at 186 (point in fifth amended complaint where the paragraph numbers begin to repeat). The quotations above are from the second paragraph 457 and the second paragraph 468, as there are no allegations of ongoing conduct in the first paragraph 457 or the first paragraph 468.

6

are no specific and particularized allegations of conduct occurring after the latest date on the Attorney General Documents—February 7, 2008. A few generalized allegations that conduct continued "to the present" in a 267-page complaint containing more than 768 paragraphs does not justify the burden and expense associated with unfettered discovery "to the present" in a case in which discovery is already going to be incredibly expensive and time-consuming. *Cf. Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1238 (10th Cir. 2000) (criticizing a plaintiff for pleading "its allegations in entirely indefinite terms, without in fact knowing of any specific wrongdoing by the defendant," and then basing "massive discovery requests upon those nebulous allegations, in the hope of finding particular evidence of wrongdoing"); *United States ex rel. Regan v. Medtronic, Inc.*, No. 95-1236-MLB, 2000 WL 1478476, at *3 (D. Kan. July 13, 2000) (noting that although the complaint contained generalized allegations of conduct in all fifty states, "the focus of the complaint unequivocally addresse[d]" a specific geographic region and limiting discovery to that region). The court thus uses its broad discretion to reasonably limit the timeframe for discovery and believes, given the specific factual allegations contained in the fifth amended complaint, that limiting discovery to the timeframe proposed by Solvay is reasonable. *See Regan*, 2000 WL 1478476, at *3 (determining that a discovery request spanning 20 years was overly broad and unduly burdensome and confining discovery to a "reasonable temporal scope" based on the factual allegations in the complaint).

Relators cite *Strom ex rel. United States v. Scios*, 676 F. Supp. 2d 884, 894-95 (N.D. Cal. 2009) for the proposition that a court should not arbitrarily cut off potential liability at a certain date because "[s]ubsequent attempts to shift course on their own do not absolve Defendants from earlier fraudulent activity." Dkt. 189 (quoting *Strom*, 676 F. Supp. 2d at 894-95)). The court in *Strom*,

however, was considering whether to dismiss claims occurring after March 2006 because the complaint allegedly did not sufficiently allege causation for claims submitted after March 2006. *See Strom*, 676 F. Supp. 2d at 894. The court found that causation was sufficiently alleged because even though there were no allegations of off-label promotion after March 2006, the broader allegations were that physicians continued to prescribe the drug at issue because of the off-label promotion. *Id.* at 894-95. While *Strom* is persuasive in that clearly there *could* have been prescriptions written after the acquisition and after the dates of the Attorney General Documents, Relators did not provide any reliable indicia that lead to a strong inference that claims were actually submitted after these dates. Rule 9(b) acts as a "gatekeeper to discovery," and in the Fifth Circuit Relators must provide reliable indicia leading to a strong inference that claims were actually submitted to satisfy Rule 9(b).[2] *See United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185-86 (5th Cir. 2009).

---

[2] The court notes that the timeframe proposed by Solvay is already significantly longer that the time period about which Relators have personal knowledge; the Relators were able to allege events outside of their personal knowledge with the required particularity because they had access to the Attorney General Documents. Since the "real party in interest in a qui tam action under the FCA" is the United States, the court believes it is appropriate to allow the claims arising outside of the timeframe about which Relators have personal knowledge to stand so long as they meet the Rule 9(b) standard. *United States ex rel. Walker v. R&F Props. Of Lake Cnty., Inc.*, 433 F.3d 1349, 1359 (11th Cir. 2005). However, the court does not believe it appropriate to allow Relators' generalized claims of ongoing conduct to form the basis for a fishing expedition into conduct that post-dates the filing of the original complaint and Relators' personal knowledge by more than a decade. The Eleventh Circuit, in determining whether a district court erred in cutting off discovery in a *qui tam* action when the relator's employment ceased because the relator did not have personal knowledge, noted that the third amended complaint did not limit its allegations of false claims and adequately alleged ongoing false billing. *See Walker*, 433 F.3d at 1359. The Eleventh Circuit determined that the district court erred in limiting discovery to the dates of the relator's personal knowledge, but the court still cut the date for discovery off at the filing of the original complaint. *See id.* While this court does not believe the temporal limit in this case should be based on the filing of the original complaint because there are well-pled allegations in the fifth amended complaint of alleged fraudulent conduct after the original complaint was filed, the Eleventh Circuit case demonstrates that courts should find a reasonable cut-off date. Here, the court finds that the dates proposed by Solvay are reasonable.

Relators additionally argue that their fifth amended complaint justifies discovery afer the date Abbott acquired SPI due to allegations of conduct by certain individuals who are still employed by Abbott. Relators point out that Jim Hynd, who worked at SPI when Relators were employed there and continues to work at Abbott as the vice president of marketing and allegedly the company's spokesperson with regard to AndroGel, is "mentioned repeatedly" in the fifth amended complaint. Dkt. 189. Specifically, Relators point to paragraphs 142, 378, and 379 of the fifth amended complaint. *Id.* In paragraph 142, Relators contend that the regional business director for SPI's central region sent an email to Hynd and others containing an "Aceon Sales Tip" from John King (relator) that purportedly advocated an off-label use of Aceon. *See* Dkt. 154 ¶ 142. The court finds this allegation to be of little consequence to the contention that the alleged fraud has continued because Hynd is still employed by Abbott because (1) the email involved Aceon, not AndroGel, which is the drug Hynd is allegedly marketing now; and (2) Hynd was merely a recipient of the email.

In paragraphs 378-79, Relators allege that King told Hynd and another management official that he was no longer comfortable with the marketing practices in which he, the two managers with whom he was speaking, and the rest of the sales force were engaged, including alleged illegal activities such as providing cash and gifts as incentives to prescribe AndroGel and Aceon, providing advertising money to physicians and compensating them for screening patients, and paying specialists to peddle Solvay drugs for off-label uses. Dkt. 154 ¶ 378. Additionally, King allegedly told Hynd and the other individual that he was concerned that Solvay would "get nailed" for these allegedly unethical practices. *Id.* ¶ 379. According to King, Hynd commented that King "probably wanted to leave it alone" and walked off. *Id.* These allegations relate to a conversation that

9

allegedly took place over ten years ago. While they peripherally refer to Hynd's participation in the general company-wide scheme, they do not indicate that Hynd was responsible for implementing the scheme, and certainly do not point to any current unlawful conduct by Hynd. Relators attempt to tie the decade-old allegations relating to Hynd in the fifth amended complaint to current events by pointing out that Hynd recently stated in a press release that "AndroGel 1% has been trusted by patients and physicians for more than a decade." Dkt. 189 at 4 (quoting Dkt. 188-2). This innocuous comment may indicate that Hynd is still involved with the promotion of AndroGel, but it does not demonstrate that Hynd has been continuously engaged in wrongful conduct for the past ten years.

Relators also point out that Tom Dovel is currently employed by Abbott and is specifically mentioned in the fifth amended complaint as authoring materials for use by sales representatives that promoted AndroGel for an off-label use. Dkt. 189 at 5 (citing Dkt. 154 ¶¶ 196, 205). The dated promotional materials were allegedly circulated in July 2001. *See* Dkt. 154 ¶ 196. There is no date on the second allegation relating to Dovel. *See* Dkt. 154 ¶ 205. The court does not believe that statements Dovel allegedly made in promotional materials years ago sufficiently tie Abbott to off-label promotion today.

Relators also assert that the facts of the acquisition do not support cutting off discovery obligations on the date of acquisition because Abbott purchased Solvay "as a going concern." Dkt. 189 at 5. According to Relators, acquiring a company "as a going concern" means acquiring not only the company's assets but also its goodwill and income. *Id.* Relators contend that this fact supports their contention that the mere transfer of assets from Solvay to Abbott did not disrupt the continuity of the company enough to justify cutting off discovery on the date of the acquisition. *Id.* Solvay asserts that a purchase of a company as a "going concern" merely means that when Abbott

10

purchased SPI it had "'enough cash flow and/or other resources to maintain operations for the foreseeable future.'" Dkt. 190 at 3 (quoting the Financial Dictionary). Regardless of the definition of "going concern," the fifth amended complaint contains no reliable indicia that lead to a strong inference that claims were actually submitted after the acquisition.

Finally, Relators contend that because False Claims Act claims are subject to the first-to-file rule, if the court cuts off discovery at the dates proposed by Solvay, Solvay will be incentivized to continue its alleged wrongdoing because the first-to-file rule bars later actions alleging the same conduct. Dkt. 189 at 9. Solvay contends that the first-to-file rule does not necessarily bar later actions based on the same alleged fraud but at a different time. Dkt. 190.

Under the first-to-file rule, when a person brings a *qui tam* action under the False Claims Act, "no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." 31 U.S.C. § 3730(b)(5). In the Fifth Circuit, "as long as the later-filed complaint alleges the same material or essential elements of fraud as described in a pending *qui tam* action, § 3730(b)(5)'s jurisdictional bar applies." *United States ex rel. Branch Consultants v. Allstate Ins. Co.*, 560 F.3d 371, 378 (5th Cir. 2009). The Fifth Circuit has determined that a *qui tam* plaintiff cannot avoid the first-to-file rule "by simply adding factual details or geographic locations to the essential or material elements of a fraud claim against the same defendant described in a prior complaint." *Id.* Allowing *qui tam* plaintiffs to proceed by merely adding factual details or geographic locations "does not help 'reduce fraud or return funds to the federal fisc,' because 'once the government knows the essential facts of a fraudulent scheme, it has enough information to discover related frauds.'" *Id.* (quoting *United States ex rel. LaCorte v. SmithKline Beecham Clinical*

11

*Labs., Inc.*, 149 F.3d 227, 234 (3d Cir. 1998)). Thus, there is no need for a relator to bring the alleged fraud to the government's attention.

Solvay argues that Relators cannot justify their expansive discovery and preservation demands by arguing that § 3730(b)(5) somehow operates to immunize a defendant if discovery is limited in time to the well-pled allegations in the complaint. Dkt. 188. Solvay relies principally on *United States ex rel. Hoggett v. Univ. of Phoenix*, No.2:10-cv-02478-MCE-KJN, 2012 WL 2681817, at *3 (E.D. Cal. July 6, 2012). *See* Dkt. 188 at 20. In *Hoggett*, the relators brought a claim based on the facts in another *qui tam* lawsuit that had settled, but the new lawsuit alleged fraud that took place *after* the fraud that was litigated in the first lawsuit. 2012 WL 2681817, at *3. The federal district court in the Eastern District of California determined that the relators were not barred by the first-to-file rule because the original claim was no longer "pending," and the first-to-file rule only applies if the original action is still pending. *Id.* The court noted that using "the first-to file rule to bar whistleblower suits that allege new fraud perpetrated by a wrongdoer after completion of a previous suit would thwart the statute's purpose to encourage whistleblowers to come forward." *Id.*

While *Hoggett* makes clear that a *qui tam* relators may bring a claim for alleged ongoing conduct after the original case is over, it does not necessarily help with the argument that, if the court were to limit the discovery timeframe, Abbott could continue its alleged fraudulent practices while this suit remains pending without fear of another *qui tam* lawsuit being brought. It is unclear whether another court would have jurisdiction over related claims brought by a *qui tam* plaintiff for conduct occurring after the temporal timeframe of the fifth amended complaint while this case is still pending. However, the court finds that Relators' argument that Abbott would be incentivized to continue its alleged wrongdoing due to the first-to-file rule bar on related claims is ill-founded. Even if future *qui tam* plaintiffs are barred from filing related claims from a later time period while this

case is pending, the Government is free to file a claim for related conduct under the statute at any time, and it has been alerted to the alleged fraud due to Relators' complaint. Thus, the court does not believe Abbott (or any other defendant) would feel it is free to engage in wrongdoing that has already been brought to the forefront of the Government's attention simply because the defendant may be able to obtain a dismissal of another *qui tam* action relating to the conduct.

### IV. CONCLUSION

In sum, the court finds that Solvay, which has outlined specific details about how many additional emails Abbott would have to preserve and how expensive processing and reviewing these emails is, has shown good cause for a protective order. The proposed Discovery and Preservation Cut-Off Dates are reasonable and necessary to ensure that the preservation and discovery costs are not overly broad, unduly burdensome, and unreasonable in relation to the well-pled allegations in the fifth amended complaint. Solvay's motion for a protective order is therefore GRANTED. Solvay's discovery obligations (1) are limited to the time period relevant to the well-pled allegations of the fifth amended complaint and no later than December 31, 2007; (2) do not require preservation of material beyond February 7, 2008, the date of the last state subpoena; and (3) do not require preservation of material relating to post-acquisition conduct after February 16, 2010.

It is so ORDERED.

Signed at Houston, Texas on March 5, 2013.

_____
Gray H. Miller
United States District Judge