IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>*ex rel.* John King, *et al.*, | §<br>§<br>§ | |
| *Plaintiffs*, | §<br>§ | CIVIL ACTION NO. 06-2662 |
| v. | §<br>§ | |
| SOLVAY S.A., *et al.*, | §<br>§ | |
| *Defendants*. | §<br>§ | |

**DEFENDANT SOLVAY AMERICA, INC.'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COMES NOW, Defendant, Solvay America, Inc. ("SAI"), and pursuant to Rule 56 of the Federal Rules of Civil Procedure, files this Motion for Summary Judgment on all claims made by relators John King and Tammy Drummond (collectively, "Relators") against SAI. In support of its Motion for Summary Judgment, SAI would respectfully show unto this Honorable Court as follows:

Dated: June 24, 2013

Respectfully submitted,

By: /s/ Rachel Clingman
Rachel G. Clingman
State Bar No. 00784125
Federal I.D. No. 15742
Email: rachel.clingman@sutherland.com
First City Tower
1001 Fannin Street, Suite 3700
Houston, Texas 77002
Telephone: 713.470.6100
Facsimile: 713.654.1301
**SUTHERLAND ASBILL & BRENNAN LLP**

**ATTORNEY-IN-CHARGE FOR
SOLVAY AMERICA, INC.**

**OF COUNSEL:**

Jack Massey
State Bar No. 24051004
Federal I.D. No. 658576
Email:  jack.massey@sutherland.com
Mark Thibodeaux
State Bar No. 24070732
Federal I.D. No. 1475260
Email:  mark.thibodeaux@sutherland.com
First City Tower
1001 Fannin Street, Suite 3700
Houston, Texas  77002
Telephone:  713.470.6100
Facsimile:  713.654.1301
**SUTHERLAND ASBILL & BRENNAN LLP**

## **TABLE OF CONTENTS**

| | | | |
|---|---|---|---:|
| I. | INTRODUCTION AND SUMMARY OF ARGUMENT | | 5 |
| II. | NATURE AND STAGE OF PROCEEDING | | 6 |
| III. | STATEMENT OF ISSUES AND STANDARD OF REVIEW | | 7 |
| IV. | ARGUMENT AND AUTHORITIES | | 8 |
| | A. | NEW SAI is a distinct company from OLD SAI with no connection to the pharmaceuticals business. | 9 |
| | B. | SPI is not an alter ego of NEW SAI. | 11 |
| V. | CONCLUSION AND PRAYER | | 14 |

# **TABLE OF AUTHORITIES**

**Cases**                                                 **Page(s)**

*Anderson v. Liberty Lobby, Inc.*
    477 U.S. 242 (1986)     8

*Carrizales v. State Farm Lloyds*
    518 F.3d 343 (5th Cir. 2008)     7

*Carver v. Liberty Mut. Ins. Co.*
    277 F.2d 105 (5th Cir. 1960)     9

*Celotex Corp. v. Catrett*
    477 U.S. 317 (1986)     7

*Cunningham v. Advanta Corp.*
    No. 08-CV-1794, 2009 WL 290031 (N.D. Tex. Feb. 3, 2009)     9

*Little v. Liquid Air Corp.*
    37 F.3d 1069 (5th Cir. 1994)     7

*McCallum Highlands v. Wash. Capital Dus, Inc.*
    66 F.3d 89 (5th Cir. 1995), as revised on denial of reh 'g, 70 F.3d 26 (5th Cir. 1995)     7

*S.W.S. Erectors, Inc. v. Infax, Inc.*
    72 F.3d 489 (5th Cir. 1996)     7

*Topalian v. Ehrman*
    954 F.2d 1125 (5th Cir. 1992)     8

*United States v. Jon-T Chems.*
    768 F.2d 686 (5th Cir. 1985)     11–14

*Wallace v. Texas Tech Univ.*
    80 F.3d 1042 (5th Cir. 1996)     7

**Rules**

Fed. R. Civ. P. 56(c)     7

# I.
# INTRODUCTION AND SUMMARY OF ARGUMENT

This is a case of mistaken identity. Relators assert that Solvay America, Inc. ("SAI"), either defrauded government health care programs through the improper marketing of three drugs—Aceon, AndroGel, and Luvox—or is responsible for that fraud through the conduct of its alter ego, Solvay Pharmaceuticals, Inc. ("SPI"). But these allegations do not pertain to the company now known as SAI. They pertain, if at all, to a distinct company that used the Solvay America name in the past. Relators have sued the wrong SAI.

A corporate reorganization in 2005 led to the name "Solvay America" shifting from one company to a different one. The first SAI—which existed until 2005 and was holding company for pharmaceutical and non-pharmaceutical businesses—is referred to in this motion as "OLD SAI." The second one—which came into existence in 2005 and has served as a holding company for Solvay's *non-pharmaceutical* business in the United States since then—is referred to as "NEW SAI." For the convenience of the Court, a chart of the relationship between NEW SAI and OLD SAI is included as *Figure 1* below. The allegations in the Relators' Fifth Amended Complaint pre-date 2005, meaning they relate to the alleged conduct of OLD SAI. NEW SAI, a defendant in this lawsuit, never had anything to do with Solvay's pharmaceutical business.

The issue before the Court is whether the evidence shows that SPI is an alter ego of NEW SAI. At the motion to dismiss stage, when it was required to treat Relators' allegations as true, the Court found allegations of SAI's direct involvement in the marketing scheme insufficient to state a claim under Rule 9(b), but held that Relators had plausibly alleged an alter ego relationship between SAI and SPI. Now, at the summary judgment stage, the Court is no longer required to accept Relators' allegations as true. Instead, the question is what the evidence shows.

And the evidence shows that NEW SAI never had an alter ego relationship with SPI. As a result, NEW SAI is entitled to summary judgment in its favor.

*Figure 1— Corporate Structure before and after 2005*



## II.
## NATURE AND STAGE OF PROCEEDING

Relators filed this False Claims Act ("FCA") case in federal court in Philadelphia on June 10, 2003, and the case was transferred to this Court in 2006. This Court has dismissed several of the Relators' claims, including all of the claims against co-defendant Solvay North America, LLC, after concluding that Relators' alter ego allegations against that company lacked plausibility. Dkt. 153 (Order on Motion to Dismiss 4th Amended Complaint or "Order re 4AC"). Relators have amended their Complaint five times, most recently on November 22, 2011. Dkt. 154 (Fifth Amended Complaint or "5AC"). This Motion is filed pursuant to the Court's March 20, 2013, Docket Control Order. Dkt. 193.

## III.
## STATEMENT OF ISSUE AND STANDARD OF REVIEW

The issue before this Court is whether SAI is entitled to summary judgment based on undisputed and undisputable facts demonstrating that SAI is not and never has been the alter ego of SPI.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008). The movant bears the initial burden of informing the Court of evidence, if any, that demonstrates the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A defendant seeking summary judgment is not required to negate the non-movants' claim, but rather is required only to point out that there is an absence of evidence to support the plaintiff's case or, alternatively, offer affirmative evidence which demonstrates that the plaintiff cannot prove his case. *Id.* at 322–25.

Factual controversies are to be resolved in favor of the nonmoving party, but "only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1048 (5th Cir. 1996) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)); *see also S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir. 1996). In the absence of any proof, the Court should not "assume that the [non-movant] could or would prove the necessary facts." *McCallum Highlands v. Wash. Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *as revised on denial of reh 'g*, 70 F.3d 26 (5th Cir. 1995). "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

247–48 (1986).  When the non-movant fails to set forth specific facts to show that there is a genuine dispute for trial, summary judgment is appropriate.  *Topalian v. Ehrman*, 954 F.2d 1125, 1132 (5th Cir. 1992).

## IV.
## ARGUMENT AND AUTHORITIES

### NEW SAI IS ENTITLED TO SUMMARY JUDGMENT BECAUSE THE EVIDENCE LEAVES NO GENUINE DISPUTE OF FACT AS TO WHETHER NEW SAI IS THE ALTER EGO OF SPI.

At the motion-to-dismiss stage, Relators argued that their causes of action against SAI could be sustained either because SAI was directly linked to the alleged fraudulent scheme or because SPI was the alter ego of SAI, such that SPI's actions could be imputed to SAI.  The Court disagreed as to the first argument, holding that any potential link between SAI and a "national marketing scheme to get physicians to prescribe Luvox, AndroGel, and Aceon to patients on federal healthcare programs is extremely weak and not sufficient to state a claim under Rule 9(b) against [SAI]."  Dkt. 153 at 122.

As to Relators' second argument for avoiding dismissal, the Court carefully assessed the Relators' allegations about the relationship among the various Solvay defendants and the individual Solvay defendants' roles within the larger corporation.  In particular, the Court found Relators' alter ego theory plausible given Relators' allegation that SAI was SPI's parent corporation, that SAI's officers serve on SPI's Board of Directors, that SAI provides insurance coverage and is in charge of the savings and pension plans for SPI employees, that SAI paid part of the purchase price for SPI, that SAI sets mileage reimbursement for SPI employees, that SAI approves airline chartering and purchase of any club memberships and season tickets for SPI, and that SAI sent an audit memorandum to SPI questioning reimbursement requests for alleged

kickbacks. Dkt. 153 at 127 ("These allegations are sufficient, if taken as true, to plausibly allege that SPI is the alter ego of SAI.").

As the evidence described in more detail below plainly demonstrates, none of these allegations accurately describe the relationship between NEW SAI and SPI.

A.  **NEW SAI is a distinct company from OLD SAI with no connection to the pharmaceuticals business.**

Defendant NEW SAI's summary judgment evidence demonstrates that it is a wholly distinct corporate entity from OLD SAI, the entity against whom Relators' alter ego allegations are directed. NEW SAI does not have now, and never had, any involvement in the pharmaceuticals line of business. Put simply, Relators sued the wrong party. And their claims should accordingly be dismissed. *See Carver v. Liberty Mut. Ins. Co.*, 277 F.2d 105, 109 (5th Cir. 1960); *Cunningham v. Advanta Corp.,* No. 08-CV-1794, 2009 WL 290031 at *5 (N.D. Tex. Feb. 3, 2009) (not reported) ("Summary judgment is appropriate when a plaintiff sues the wrong party.") (citing *Carver*, 277 F.2d at 109).

From 1974–2001, NEW SAI was solely involved in the business of manufacturing and selling high density polyethylene and polypropylene. It was known during this time first as Soltex Polymer Corporation and later as Solvay Polymers, Inc. *See* Buckingham Declaration, attached as Exhibit A, at ¶¶ 6-7[1]; Certificate of Incorporation of Soltex Polymer Corporation, Nov. 13, 1974, attached as Exhibit B; Restated Certificate of Incorporation of Soltex Polymer Corporation, Dec. 31, 1990, attached as Exhibit C. From 2001 through 2005, NEW SAI was a holding company, owning shares of companies that were solely involved in the manufacturing and selling of polymers. Buckingham Declaration at ¶ 7. The company assumed the name

---

[1]  Edwin Buckingham was the Senior Executive Vice President and North American General Counsel for NEW SAI until his retirement in March 2013. *Id.* at ¶ 1.

Solvay America, Inc., in November 2005. Certificate of Amendment of Solvay Polymers, Inc., Nov. 29, 2005, attached as Exhibit D; Buckingham Declaration at ¶ 6.

Prior to Solvay Polymers, Inc., assuming the name "Solvay America, Inc." in 2005, its parent company (i.e., OLD SAI) had gone by that name. OLD SAI had been the parent not only to Solvay Polymers, Inc., but also to SPI and Solvay North America, LLC. Buckingham Declaration at ¶¶ 8, 10. As such, OLD SAI had subsidiaries both in the pharmaceuticals business (e.g., SPI) and in the chemicals and plastics businesses (e.g., Solvay Polymers, Inc.) before 2005. In November 2005, OLD SAI became Solvay Pharma U.S. Holdings, Inc. *See* Certificate of Amendment of Solvay America, Inc., Nov. 29, 2005, attached as Exhibit G; Buckingham Declaration at ¶ 9.[2]

After 2005, OLD SAI was the holding company for Solvay's pharmaceuticals businesses in the United States and NEW SAI was the holding company for its non-pharmaceutical businesses in the United States. Buckingham Declaration at ¶ 11. OLD SAI was the parent of SPI before the reorganization and continued as its parent afterwards. *Id.* at ¶ 10. In 2009, OLD SAI/Solvay Pharma U.S. Holdings and its subsidiary SPI were sold to Abbott Laboratories, a defendant in this lawsuit. *Id.* at ¶ 24. NEW SAI ceased to be a subsidiary of OLD SAI as a result of the reorganization. *Id.* at ¶ 11. A polymers company before the reorganization, it held polymers and chemicals companies afterwards, and never entered the pharmaceuticals business. *Id.* at ¶¶ 7, 11–13.

---

[2] OLD SAI was originally incorporated as The Solvay American Corporation in 1957, and it operated under that name until October 1984, when it changed its name to Solvay America, Inc., becoming OLD SAI. Certificate of Incorporation of The Solvay American Corporation, Apr. 15, 1957, attached as Exhibit E; Certificate of Amendment of The Solvay American Corporation, Oct. 29, 1984, attached as Exhibit F.

10

NEW SAI's corporate history shows that it could not have been involved, as Relators allege, in the operations of SPI. Relators' allegations against SAI all focus on communications made and services rendered before 2005, at which time NEW SAI was known as Solvay Polymers, Inc., and did not provide services to Solvay Pharmaceuticals, Inc.

B.     **SPI is not an alter ego of NEW SAI.**

Relators' contention that SPI is the alter ego of SAI is flawed: it confuses OLD SAI with NEW SAI. While OLD SAI was the parent of SPI, NEW SAI never was. The closest relationship between NEW SAI and SPI was as sister subsidiaries under OLD SAI. And while Relators allege a number of acts that they say shows that SPI is an alter ego of SAI, these allegations concern acts that predate the 2005 reorganization and therefore relate only to OLD SAI. There are no allegations—and no evidence—that NEW SAI treated SPI as an alter ego.

The Court's motion-to-dismiss ruling applied the analysis set out in *United States v. Jon-T Chems., Inc.*, 768 F.2d 686, 691-92 (5th Cir. 1985) to determine the viability of Relators' alter ego allegations against SAI. Dkt. 153 at 126–27. Although Relators have filed a Fifth Amended Complaint since that ruling, they have not altered any of their allegations that supported their alter ego assertions. The allegations against SAI are identical in the Fourth Amended and Fifth Amended Complaints. The Court should thus apply the *Jon-T Chems.* factors to the actual corporate relationship between NEW SAI and SPI. When it does, there is only one possible answer: there is no alter ego relationship.

The allegations discussed by the Court in its motion-to-dismiss ruling and retained in the operative Fifth Amended Complaint illustrate this point. Relators allege that SPI was a wholly owned subsidiary of SAI until 2004, *see* Dkt. 154 at ¶ 15; that allegation is unconnected to NEW SAI. Relators allege that in 2001 the CEO and Vice President of Finance of SAI sat on SPI's

Board of Directors, *id.* at ¶ 19; that allegation, too, is unconnected to NEW SAI. Relators allege that SAI paid part of the purchase price for SPI in 1986, *id.* at ¶ 17, sent an audit memorandum to SPI regarding the alleged reimbursement of kickbacks related to the drug marketing scheme in 2000, *id.* at ¶¶ 23, 358, 384, and issued joint press releases with SPI on the drugs at issue in this lawsuit in 1999, *id.* at ¶ 24; again, these allegations have no relation to conduct by NEW SAI. Relators also allege that SAI provided SPI with insurance coverage and ran SPI's pension plan until 2002, *id.* at ¶ 22, that SAI set certain policies and approves certain expenses for SPI until 2002, *id.*, and that all Solvay affiliates' financial data is grouped in a global annual report, *id.* at ¶ 18. The only one of these allegations that is accurate as to NEW SAI is that NEW SAI also included its financial data in a global annual report.

As Buckingham's declaration explains:

- Until the end of November 2005, NEW SAI was called Solvay Polymers, Inc. and was a sister company of SPI. Buckingham Declaration at ¶¶ 6, 12. This sister company relationship was further attenuated after NEW SAI took on the name Solvay America, Inc., because as of that time, NEW SAI and SPI no longer shared a common immediate parent company. NEW SAI has never held any of the shares of SPI, or otherwise had any control over that entity. *Id.* at ¶ 13. NEW SAI was never the parent of SPI. *Id.* at ¶ 12. OLD SAI was the parent of SPI. *Id.* at ¶ 10.

- The 2001 CEO and Vice President of Finance of SAI who sat on SPI's Board of Directors were officers of OLD SAI. *Id.* at ¶¶ 20, 21. They were not the CEO and Vice President of Finance for NEW SAI, which in 2001 was still named Solvay Polymers, Inc.[3] *Id.* at ¶¶ 6, 20, 21.

- It was OLD SAI, not NEW SAI, that provided insurance and other benefits, including retirement plans, for SPI employees through 2002 (the time noted in the complaint allegation). *Id.* at ¶¶ 14-15.

- NEW SAI did not pay any part of the purchase price for SPI in 1986. *Id.* at ¶ 13. At the time of the acquisition, NEW SAI was still named Soltex Polymer Corporation. *Id.* at ¶ 6;

---

[3] From time to time some officers of NEW SAI have sat on the board of SPI and other Solvay companies. The Fifth Circuit has made clear, however, that even "one-hundred percent ownership and identity of directors and officers are . . . an insufficient basis for applying the alter ego theory to pierce the corporate veil." *Jon-T Chems., Inc.*, 768 F.2d at 691.

12

> Restated Certificate of Incorporation of Soltex Polymer Corporation, attached as Exhibit C; Certificate of Amendment of Solvay Polymers, Inc., attached as Exhibit D.

- NEW SAI did not set SPI policy regarding reimbursements through 2002 (the time noted in the complaint allegation), and it has never approved expenses for SPI. Buckingham Declaration at ¶¶ 14, 19.

- The audit to which Relators' complaint refers occurred in 2000, when Defendant NEW SAI was still called Solvay Polymers, Inc. It was conducted by OLD SAI. The auditor referred to in the complaint, David Neuberger, was an employee of OLD SAI. *Id.* at ¶ 22.

- As noted above, until November 2005, NEW SAI was named Solvay Polymers, Inc. *Id.* at ¶ 6; Restated Certificate of Incorporation of Soltex Polymer Corporation, attached as Exhibit C; Certificate of Amendment of Solvay Polymers, Inc., attached as Exhibit D. Any references to SAI on press releases from 1999 relating to Luvox, Aceon, and AndroGel are references to OLD SAI.

While Relators are correct that SPI was a subsidiary of a company called SAI before 2005, they are incorrect in alleging that SPI was a subsidiary of the company that is now called SAI. Before 2005, NEW SAI was known as Solvay Polymers, Inc. and was a sister subsidiary of SPI, not its parent.

This Court has already dismissed Relators' claims against another of SPI's sister subsidiaries, Solvay North America, Inc. ("SNA"), after finding that Relators' alter ego allegations were insufficient. While SNA allegedly had some connections with SPI—access to group databases; common officers and directors; the provision of some services from SNA to SPI—they were not enough to show the "total dominat[ion] and control" that the *Jon -T Chems.* standard requires. Dkt. 153 at 126; *Jon-T Chems.* 768 F.2d at 691.

The case for judgment in favor of NEW SAI is even clearer. Prior to November 2005, when it existed as Solvay Polymers, Inc., the alter ego allegations against the company are non-existent. After 2005, NEW SAI's connections to SPI are—at most—similar to SNA's: the

13

sharing of information and the provision of some services.[4] This Court has already found such connections insufficient to support an alter ego theory of recovery. That sort of attenuated connection between sister corporations is a far cry from the level of "total dominat[ion] and control" of SPI that would be required to pierce a corporate veil and find one corporation to be the alter ego of another. *Jon-T Chems.* 768 F.2d at 691.

As the evidence supporting this motion shows, NEW SAI is a different company from the one which allegedly controlled SPI. And there can be no genuine issue of material fact regarding its non-involvement with the acts and situations alleged by the Relators. The claims against it should be dismissed.

## V.
## CONCLUSION AND PRAYER

Relators have sued the wrong party. The company currently known as SAI and served as a defendant in this action is not now—and never has been—involved in the manufacture, marketing, or selling of pharmaceuticals. Neither has it controlled SPI at any time. As a matter of law, therefore, it cannot be found liable for any of the claims made by Relators against SPI.

WHEREFORE, PREMISES CONSIDERED, Defendant Solvay America, Inc., respectfully requests that this Court grant its Motion for Summary Judgment, enter judgment in its favor on all counts of Relators' Complaint, and award Solvay America, Inc., all such other and further relief to which it is justly entitled.

---

[4] After November 2005, NEW SAI has sponsored certain SPI benefit plans without paying the expenses for those plans and has provided guidance on business policies for Solvay's North American businesses.

**CERTIFICATE OF SERVICE**

I hereby certify that I have this day electronically filed the foregoing Motion for Summary Judgment with the Clerk of Court using the CM/ECF system, which will cause a copy to be electronically served upon all counsel of record.

This 24th day of June, 2013.

                                                    */s/ Rachel Clingman*
                                                    Rachel Clingman

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA §<br>*ex rel.* John King, *et al.*, §<br>§<br>*Plaintiffs*, §<br>§ **CIVIL ACTION NO. 06-2662**<br>v. §<br>§<br>SOLVAY S.A., *et al.*, §<br>§<br>*Defendants*. § | |

## **TABLE OF EXHIBITS**

**Summary Description of Document**

| | |
|---|---|
| **Exhibit A:** | Affidavit of Edwin J. Buckingham III |
| **Exhibit B:** | Certificate of Incorporation of Soltex Polymer Corporation, Nov. 13, 1974 |
| **Exhibit C:** | Restated Certificate of Incorporation of Soltex Polymer Corporation, Dec. 31, 1990 |
| **Exhibit D:** | Certificate of Amendment of Solvay Polymers, Inc., Nov. 29, 2005 |
| **Exhibit E:** | Certificate of Incorporation of The Solvay American Corporation, Apr. 15, 1957 |
| **Exhibit F:** | Certificate of Amendment of The Solvay American Corporation, Oct. 29, 1984 |
| **Exhibit G:** | Certificate of Amendment of Solvay America, Inc., Nov. 29, 2005 |