United States District Court
Southern District of Texas
**ENTERED**
June 28, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| *ex rel.* JOHN KING and | § | |
| TAMMY DRUMMOND, *et al.*, | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION H-06-2662 |
| | § | |
| SOLVAY S.A., *et al.*, | § | |
| Defendants. | § | |

### MEMORANDUM OPINION AND ORDER

Pending before the court is a bill of costs submitted by defendant Solvay Pharmaceuticals, Inc. ("SPI"). Dkt. 640. Having reviewed the bill of costs, objections, related documents in the record, and the applicable law, the court is of the opinion that the objections to SPI's bill of costs should be OVERRULED IN PART and SUSTAINED IN PART as explained below.

### I. BACKGROUND

SPI, which prevailed on Relators John King and Tammy Drummond's (collectively, "Relators") claims via summary judgment, now seeks $961,380.51 in costs. Dkt. 640. SPI seeks $100,691.47 in fees for printed or electronically recorded transcripts necessarily obtained for use in the case, $280.00 for fees for witnesses, and $860,409.04 for fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case. *Id.* The large amount requested for exemplification includes copies and certain electronic discovery expenses. Dkt. 640-1.

Relators object to all but $5,808.17 of the costs requested by SPI. Dkt. 653. Specifically, Relators object to $170.00 of the $533.05 SPI requests for hearing transcripts because one of the transcripts SPI requested was expedited. *Id.* Relators also object to all of the deposition costs except

for the written transcripts of the two Relators and one expert, asserting that only $4,681.60 of the deposition transcript fees are taxable. *Id.* Relators object to all of the costs for exemplification. *Id.* SPI seeks only fifty percent of the amount it spent for its third-party vendor to make copies; it applied a fifty percent reduction to account for any copies that may have been made for the convenience of counsel. Dkt. 640-1. Relators assert that SPI has not shown that the fifty percent reduction in costs is a reasonable estimate of the amount that should be deducted from the total costs. Dkt. 653. Relators additionally argue that SPI is not entitled to any copy costs related to e-discovery. *Id.* Relators do not object to the $280 requested for witness fees. *Id.*

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 54(d), "[u]nless a federal statute, [the Federal Rules of Civil Procedure], or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d). Absent objections, the clerk may tax the costs 14 days after the prevailing party notifies the clerk of its costs. *Id.* Under 28 U.S.C. § 1920, the judge or clerk may tax the following as costs:

> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under [28 U.S.C. § 1923];
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under [29 U.S.C. § 1828].

28 U.S.C. § 1920.  In this case, SPI has requested costs under subsections (2), (3), and (4) and Relators have objected to portions of the costs requested under subsections (2) and (4).  The court will discuss cases interpreting these subsections in the analysis section.

### III. ANALYSIS

The court will address each of the costs that SPI has requested to which Relators object *seriatim*.

### A.      Hearing Transcripts ($533.05)

SPI requests $533.05 in costs for hearing transcripts pursuant to 28 U.S.C. § 1920(2). Dkts. 640, 640-1.  Relators partially object to this request.  Specifically, they object to a fee of $170 for a copy of the transcript of a hearing that occurred in February 2010.  Dkt. 653.  Relators contend that the fee includes a rush fee that SPI's counsel did not justify in his affidavit supporting the bill of costs.  *Id.*  SPI responds that there is no indication on the invoice that a surcharge was added to expedite the transcript, and it argues that, even if there were a charge to expedite the transcript, it was necessary due to the "special character" of how Relators have litigated this case.  Dkt. 656.  SPI contends that it needed the transcript because Relators had filed confidential documents in a response to a motion even though the court had previously ruled that Relators could not use those documents without SPI's consent.  *Id.*  SPI asserts that it needed the transcript on an expedited basis to show that the documents had been used in violation of a court order.  *Id.*

The court has reviewed the transcript order form and invoice.  SPI requested an expedited transcript, but the court reporter's invoice does not indicate whether there was a surcharge for expediting the transcript.  *See* Dkt. 640, Oakley Dec., Ex. 1 at 1–4.  Regardless, SPI has justified the

need for an expedited transcript. While "the extra cost of obtaining a trial transcript on an expedited basis is not taxable absent prior court approval," it may be taxed if the "special character of the litigation necessitates the expedited receipt of transcripts." *Thanedar v. Time Warner, Inc.*, 352 F. App'x 891, 903 (5th Cir. 2009) (finding that the district court's decision to award costs for an expedited transcript was not an abuse of discretion under the specific facts of that case). Relators' objection is OVERRULED. SPI's request for $533.05 for hearing transcripts, which includes $170 for the February 2010 hearing that may have included a fee to expedite the transcript, is APPROVED.

## B.    Written Deposition Transcripts ($52,734.59)

SPI requests $52,734.59 for written deposition transcripts under 28 U.S.C. § 1920(2). Dkts. 640, 640-1. Relators concede that $4,681.60 of the deposition transcript fees is taxable, which is the cost of the transcripts for John King's and Tammy Drummond's (the Relators) depositions, minus ASCII and late fees. However, Relators object to the remaining $48,052.99 of the $52,734.59 for deposition transcripts that SPI requested. Dkt. 653. Relators argue that the objected-to costs should not be allowed because (1) most of the invoices do not itemize the number of pages, rate per page, or, if video, number of hours; (2) the itemized invoices reflect non-taxable costs such as ASCII costs,[1] shipping or courier fees, video archive fees, late fees, and extra copy fees; (3) SPI has not sufficiently demonstrated a need for the depositions other than those used in summary judgment and

---

[1]  According to dictionary.com, "ASCII" is an abbreviation of "American Standard Code for Information Interchange." *See* Dictionary.com, ACII, http://www.dictionary.com/browse/american-standard-code-for-information-interchange. It is the "basis of character sets used in almost all present-day computers." *Id.*

4

*Daubert* motions; and (4) SPI improperly requested reimbursement for both transcripts and videos of each witness deposed.  Dkt. 653.

SPI argues that (1) there is no authority for not allowing deposition costs because the third-party court reporter did not itemize per-page or hourly rates; (2) the only deposition costs it requests are for depositions used in the summary judgment and *Daubert* briefing or witnesses that *Relators* noticed, and it was reasonable to assume the depositions noticed by Relators would be necessary for SPI's preparation of the case; (3) courts in the Southern District of Texas typically allow for both stenographic and videotaped depositions if it is reasonably anticipated that the videos will be used in trial; (4) ASCII costs are essential to making the videotaped depositions compatible with litigation software; (5) SPI ordered an additional copy of a deposition only because the original copy had a formatting error; and (6) SPI did not include the shipping and courier fees in its bill of costs. Dkt. 656.  SPI concedes that the late fees should not be taxed and that the fees requested should thus be reduced by $2,227.56.  *Id.*

Relators, in reply, continue to object to all costs for deposition transcripts that were not itemized and to all the videos.  They withdraw their objection to most of the itemized deposition transcript costs for Dr. Saigal, since Relators cited that deposition in their summary judgment brief. Dkt. 658.  However, they continue to object to the costs that are ancillary and unreasonable in that invoice: Rough ASCII ($312.00), Saturday/Sunday per diem ($250.00), Admin/O/1 ($60.00), LEF ($100.00), Etranscript-Email ($30.00), and Obtain Witness Signature ($40.00).  They state that the total leftover and legitimate cost is $1,372.80.  *Id.*  As far as ASCII costs, in general, Relators argue that while it saves time to create deposition excerpts for trial, it is a convenience, not a necessity. *Id.*  Relators additionally contend that, while at times both transcripts and video are necessary, SPI

has failed to show that both were necessary in this case. *Id.* They continue to object to all costs except the legitimate non-ancillary costs of the written deposition transcripts of King, Drummond, and Saigal. *Id.*

### 1.    Itemized Written Deposition Transcript Invoices

Relators provide itemized invoices for deposition transcripts for the following witnesses: Tammy Drummond, Terry Garcia-Gannon, John King, Stacy LaClaire, Teresa Mullins, Teresa Pigott, M.D., and Christopher Saigal, M.D.  Dkt. 640, Ex. 2.  Under 28 U.S.C. § 1920(2), a prevailing party may recover "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case."  "[I]ncidental costs associated with depositions, such as the cost of expedited delivery charges, ASCII disks, and parking, are generally not recoverable." *Maurice Mitchell Innovations, L.P. v. Intel Corp.*, 491 F. Supp. 2d 684, 687 (E.D. Tex. 2007).  SPI argues that ASCII was essential to make the transcripts compatible with its litigation software. Dkt. 656.  SPI contends that it did not include the shipping and courier fees in its bill of costs. *Id.*  With regard to fees for extra copies, SPI asserts that the only fee for extra copies indicated in the invoices was for a single additional copy of a deposition video that the court reporter sent to supplement the original copy, which had a formatting error.[2] *Id.*

First with regard to ASCII, the court agrees with the courts that have determined it is a convenience, not a necessity.  *See, e.g.*, *United States ex rel. Gonzalez v. Fresenius Med. Care N. Am.*, 761 F. Supp. 2d 442, 450 (W.D. Tex. 2010) (finding that while ASCII disks "were undoubtedly useful in the drafting of motions and preparation for trial, . . . they were primarily a convenience to the parties" and determining that costs would not be taxed for ASCII); *Maurice Mitchell Innovations,*

---

[2] The court will address the videos *infra*.

*L.P.*, 491 F. Supp. 2d at 687 (finding that the prevailing party failed to explain why ASCII expenses were necessary); *Harris Corp. v. Sanyo N. Am. Corp.*, No. 3-98-CV-2712-M, 2002 WL 356755, at *3 (N.D. Tex. Mar. 4, 2002) (finding that the argument that the ASCII disks helped the prevailing party pinpoint deposition testimony indicated it was used "merely for the convenience of counsel" and therefore not taxable).  Second, in reviewing the invoices, the court noted numerous ancillary fees that appear to be for convenience only, such as a fee for Saturday/Sunday per diem and a fee for a USB drive.  Dkt. 640, Ex. 2.  SPI has not met its burden of demonstrating that these fees were necessary and not merely for convenience.  The court thus finds that, for the itemized invoices for written deposition transcripts, the only recoverable costs are the costs for one copy of the transcript and one copy of the exhibits.

### 2.    Non-Itemized Written Deposition Transcript Invoices

SPI provides non-itemized invoices for the written deposition transcripts of the following witnesses: Shalender Bhasin, M.D., Justin R. Blok, Robert P. Brady, Karen Carlisle, Jay N. Cohn, M.D., Sherry Corson, Stephen Z. Fadem, M.D., Arnold I. Friede, Felicia Gelsey, Joseph Glenmullen, Daniel Gobat, Timothy Hatke, Eric Hollander, M.D., Jim Hynd, Part 1, Jim Hynd, Part 2, Jim Hynd, Part 3, Steve Jennings, Hjalmar Lagast, Larry Lipshultz, Kris Minne, John Morley, MD, Richard A. Mortimer, Ph.D., Jack Redmond, Meredith Rosenthal, Ed Shutter, Christa Arvell Townsend, and Roland Gerritsen van der Hoop, M.D., Ph.D.  Dkt. 640, Ex. 2.  Relators object to the fees for all depositions for which SPI did not provide the court with an itemized invoice.  Dkt. 653.

Relators rely on *Pan American Grain Manufacturing Co. v. Puerto Rico Ports Authority*, 193 F.R.D. 26, 34 (D.P.R. Jan. 5, 2000), and *Mihailovich v. Laatsch*, No. 99 C 4780, 2002 WL 91897, at *2 (N.D. Ill. Jan. 24, 2002).  In *Pan American Grain Manufacturing Co.*, the United States District

Court for the District of Puerto Rico determined that the prevailing party was not entitled to recover any costs for one of the depositions for which it sought costs because it "failed even to present sufficient evidence for the Court to determine how much [the party] spent on the transcript." *Pan Am. Grain Mfg.*, 193 F.R.D. at 39.  The court noted that the cost of the deposition was not itemized and instead was combined with other expenses. *Id.*  In *Mihailovich*, the United States District Court for the Northern District of Illinois refused to allow deposition costs for several witnesses because the prevailing party had not "included any invoice statements about the hourly rate of the court reporter or the length of the depositions or transcripts." *Mihailovich*, 2002 WL 91897, at *2.

The court agrees with these cases, to some extent, and finds that SPI has not met its burden of showing all of the costs requested were necessary with regard to the deposition transcript invoices that are not itemized.  The invoices received do not indicate how many pages were transcribed, whether the costs includes ASCII, or any other information.  They merely state a flat rate charged for "one copy of transcript."[3]  SPI's counsel states that the "transcripts . . . were necessary in SPI's defense in this case," but the invoices do not delineate what portion of the charges were for the transcripts as opposed to possible ancillary costs such as fees for extra copies and other nonrecoverable costs.  Moreover, the court cannot simply set a reasonable rate per page per transcript because neither the invoices nor SPI's counsel's affidavit indicates the number of pages per deposition. *See, e.g.*, *Sealy v. EmCare, Inc.*, No. 2:11-CV-120, 2013 WL 3772470, at *4 (S.D. Tex. July 15, 2013) (Ramos J.) (allowing a maximum charge of $3.65 per page for transcripts when the

---

[3]  Stephen Z. Fadem's, Arnold I. Friede's, Joseph Glenmullen's, and Meredith Rosenthal's invoices state "original and 1 copy of transcript."  Dkt. 640, Ex. 2.  While the extra copies of these depositions is not a necessary fee, the court finds that the discount it has decided to apply sufficiently takes into account any deposition transcript invoices that included extra copies.

transcripts were not itemized); *Halliburton Energy Servs., Inc. v. M-I LLC*, 244 F.R.D. 369, 372–73 (E.D. Tex. 2007) (Davis, J.) (allowing the recovery of a basic transcript charge of $3.50 per page for invoices that were itemized and finding that the prevailing party did not meet its burden of showing what costs were recoverable with regard to invoices that were not itemized).  SPI could have requested an itemized invoice or at least provided more information about each transcript and demonstrated that the charged amount was reasonable.

That being said, as discussed further below, SPI has shown that it needed the depositions, and the court is not precluded from awarding costs without an itemized invoice.  *See Frischhertz v. SmithKline Beechan Corp.*, No. 10-2125, 2013 WL 3894021, at *4 (E.D. La. July 26, 2014) (citing *Hassinger v. JP Morgan Chase & Co.*, 2009 WL 2382960, at *1 (E.D. La. July 27, 2009) ("[T]he fact that a prevailing party does not submit an itemized invoice does not preclude an award of costs when counsel declares under penalty of perjury that the costs are correct and necessarily incurred.")). The court finds that a reasonable solution for SPI's failure to provide itemized invoices is to reduce the costs awarded for the non-itemized invoices for written deposition transcripts by twenty-five percent.  *See Liberty Ins. Corp. v. Caterpillar, Inc.*, No. SA-13-CV-083-XR, 2014 WL 4999317, at *3 (W.D. Tex. Oct. 7, 2014) (Rodriguez, J.) (reducing costs awarded for depositions by twenty-five percent because the bills were not itemized); *see also Weathersby v. One Source Mfg. Tech., L.L.C.*, No. A-08-CA-087-SS, 2009 WL 8747824, at *7 (W.D. Tex. Apr. 2, 2009) (Sparks, J.) (disallowing the costs of two deposition transcripts "entirely as excessive and unreasonable and for the lack of an itemized receipt or invoice"); *IEX Corp. v. Blue Pumpkin Software, Inc.*, No. 4:01CV16, 2004 WL 5698342, at *2 (E.D. Tex. Apr. 8, 2004) (Brown, J.) (completely disallowing deposition costs when the invoices submitted "fail[ed] to list the charges attributable to each service").  The court

finds that this reduction is appropriate in light of the amount of ancillary costs in the itemized invoices.

### 3. People Deposed

Relators contend that SPI has not demonstrated its need for many of the deposition transcripts it ordered. Dkt. 653. Relators contend that all of the transcripts except those actually used in summary judgment and *Daubert* motions should be rejected unless SPI can show why it needed them. *Id.* SPI argues that the only depositions it noticed were the two relators and their testifying experts, and all of their transcripts were cited in the motions. Dkt. 656. The other witnesses were all noticed by Relators and, SPI argues, it was reasonable for SPI to assume that these deposition transcripts would be necessary to properly prepare its case. *Id.* The court agrees that it was reasonable for SPI to obtain written transcripts for all of these depositions. *See Petri v. Kestrel Oil & Gas Props., L.P.*, No. CIV.A. H-09-3994, 2013 WL 265973, at *8 (S.D. Tex. Jan. 17, 2013) (Harmon, J.).

Because SPI has met its burden with regard to showing that costs for obtaining written deposition transcripts for these witnesses were necessary but has failed to meet its burden of showing that the full amount requested was necessary to obtain the transcripts, Relators' objections to the costs for written deposition transcripts are SUSTAINED IN PART AND OVERRULED IN PART. The following table provides the costs (totaling $38,926.57) that will be allowed for written depositions for each person deposed:

| Deponent | Invoice Amount | Deduction | Costs Allowed |
|---|---|---|---|
| Shalender Bhasin, M.D. | $990.70 | 25% - $247.68 | $743.02 |
| Justin R. Blok | $475.80 | 25% - $118.95 | $356.85 |

| | | | |
|---|---|---|---|
| Robert P. Brady | $824.55 | 25% - $206.14 | $618.41 |
| Karen Carlisle | $968.85 | 25% - $242.21 | $726.64 |
| Jay N. Cohn, M.D. | $1,927.25 | 25% - $481.81 | $1,445.44 |
| Sherry Corson | $1,887.88 | 25% - $471.91 | $1,415.97 |
| Tammy Drummond (1) | $1,893.95 | ASCII - $457.50<br>Shipping - $44.00 | $1,392.45 |
| Tammy Drummond (2) | $1,456.80 | ASCII - $346.50<br>Shipping - $22.00 | $1,088.30 |
| Stephen Z. Fadem, M.D. | $3,154.00 | 25% - $788.50 | $2,365.50 |
| Arnold I. Friede | $4,275.00 | 25% - $1,068.75 | $3,206.25 |
| Terry Garcia-Gannon | $854.25 | Courier - $15.00<br>Etranscript - $30.00<br>Filing Copy - $18.50<br>Admin/Copy - $50.00 | $740.75 |
| Felicia Gelsey | $686.75 | 25% - $171.69 | $515.06 |
| Joseph Glenmullen | $1,686.90 | 25% - $421.73 | $1,265.17 |
| Daniel Gobat | $1,305.88 | 25% - $326.47 | $979.41 |
| Timothy Hatke | $1,301.25 | 25% - $325.31 | $980.94 |
| Eric Hollander, M.D. | $1,142.30 | 25% - $285.58 | $856.72 |
| Eric Hollander, M.D. (2) | $2,039.00 | 25% - $509.75 | $1,529.25 |
| Jim Hynd | $1.076.08 | 25% - $269.02 | $807.06 |
| Jim Hynd (2) | $1.012.76 | 25% - $253.19 | $759.57 |
| Jim Hynd (3) | $1257.60 | 25% - $314.40 | $943.20 |
| Steve Jennings | $1,313.60 | 25% - $328.40 | $985.20 |
| John King | $1,768.15 | ASCII - $551.25<br>Litigation Pkg. CD -<br>$45.00<br>Shipping - $22.00 | $1,149.90 |
| John King (2) | $2,335.90 | ASCII - $699.75<br>Litigation Pkg CD -<br>$45.00 | $1,591.15 |

| | | | |
|---|---|---|---|
| Stacy LaClaire | $721.35 | Courier - $15.00<br>Etranscript - $30.00<br>USB - $35.00<br>Filing - $18.50<br>Admin/Copy - $65.00 | $557.85 |
| Hjalmar Lagast | $1,107.70 | 25% - $276.93 | $830.77 |
| Larry I. Lipshultz | $722.35 | 25% - $180.59 | $541.76 |
| Kris Minne | $913.15 | 25% - $228.29 | $684.86 |
| John Morley, M.D. | $1,256.85 | 25% - $314.21 | $942.64 |
| Richard A. Mortimer, Ph.D. | $1,424.30 | 25% - $356.08 | $1,068.22 |
| Teresa Mullins | $339.90 | Courier - $15.00<br>Etranscript - $30.00<br>USB - $35.00<br>Filing Copy - $18.50<br>Admin/Copy - $65.00 | $176.40 |
| Teresa Pigott, M.D. | $932.15 | 25% - $233.04 | $699.11 |
| Jack Redmond | $1,039.70 | 25% - $259.93 | $779.77 |
| Meredith Rosenthal | $1,848.75 | 25% - $462.19 | $1,386.56 |
| Christopher Saigal, M.D. | $2,248.10 | Courier - $15.00<br>Etranscript - $30.00<br>ASCII - $312.00<br>LEF - $100.00<br>Admin/O/1 - $60.00<br>Signature - $40.00<br>Per Diem - $250.00<br>Delivery - $15.00[4] | $1,426.10 |
| Ed Schutter | $1,630.55 | 25% - $407.64 | $1,222.91 |
| Christa Arvell Townsend | $831.50 | 25% - $207.88 | $623.62 |

---

[4] Relators argue that the court should deduct $53.30 from the amount that should be allowed for this transcript because the court reporter charged $0.65 per page for the exhibits.  The court finds that the exhibits are part of the deposition transcript and necessary, and it does not find the per page fee to be unreasonable.

| Roland Gerritsen van der Hoop, M.D., Ph.D. | $2,031.72 | 25% - $507.93 | $1,523.79 |

## C.     Deposition Videotape Recordings ($47,423.83)

SPI requests the cost of videotape recordings of all of the depositions for which it has requested transcripts, totaling $47,423.83.  Dkts. 640, 640-1.  SPI contends that the costs for videotaping are recoverable when a deposition could reasonably be expected to be used for trial preparation, and these videotapes were necessary.  *Id.*  SPI notes that "Relators routinely arranged to videotape their deposition[s] of current and former SPI employees and of SPI's experts, requiring that SPI order a copy of each."  *Id.*  It goes on to note that the witnesses, and in particular the Relators, were quoted extensively in the motions for summary judgment.  *Id.*  SPI argues that it also reasonably expected to make use of videotaped depositions in lieu of live testimony at trial and to impeach the credibility of witnesses.  *Id.*

Relators argue that SPI did not need to pay for both the written transcript and video of every witness deposed.  Dkt. 653.  Relators assert that SPI never used any video and that while it may have used videos at trial, it has not claimed that it began its trial prep before the court granted summary judgment.  *Id.*

Relators cite *Baisden v. I'm Ready Productions, Inc.*, 793 F. Supp. 2d 970, 976–77 (S.D. Tex. 2011) (Lake, J.), in which the defendants argued that the video depositions they obtained were necessary because it was uncertain whether the witnesses for whom they obtained video depositions could attend trial, and their credibility was disputed.  Judge Lake noted that a deposition need not be introduced into evidence in order to be necessary, and that costs may be recovered if the prevailing party shows that "'a deposition could reasonably be expected to be used for trial

13

preparation, rather than merely for discovery.'"  793 F. Supp. 2d at 977 (quoting *Fogleman v. ARAMCO*, 920 F.2d 278, 285 (5th Cir. 1991)).  Judge Lake allowed costs for videotaped and stenographic versions of the depositions for which the prevailing party requested costs but noted that "[v]ideo depositions were taken for several, but not all the witnesses in [the] case," that the defendants showed portions of several of the videos during the trial, and that the plaintiff did not dispute that the only videos taken were of witnesses whose live attendance was uncertain or whose credibility was sharply disputed.  *Id.* at 977–78.

In this case, unlike in *Baisden*, it appears that a video was ordered for every deposition, or at least every deposition for which SPI seeks to recover costs.  While the court agrees that SPI may have needed to use videotapes of depositions at trial for some of the witnesses, it has not provided the court with any details about why it needed video for every witness.  Moreover, the court does not find the argument that SPI had to order the video because Relators arranged to have the depositions taped persuasive.

In *Vital v. Varco*, No. 1201357, 2015 WL 7740417, at *2–3 (S.D. Tex. Nov. 30, 2015) (Rosenthal, J.), Judge Rosenthal considered objections to a bill of costs seeking costs for videotaped recordings of eight plaintiffs and three other witnesses.  She concluded that costs were taxable for the plaintiffs' depositions, as the defendant "reasonably expected to use the videotape recordings to prepare for and try the case," but the "video recordings for the other three witnesses' depositions were not necessarily obtained for use in the case."  2015 WL 7740417, at *2.  This court finds *Vital* persuasive and similarly holds that SPI reasonably anticipated using recordings of the two Relators to prepare and try this case, but that SPI has not met its burden of showing that it needed each of the other video recordings for which it seeks costs.  Relators' objections to the videotaped recordings

of depositions is therefore SUSTAINED IN PART AND OVERRULED IN PART.  They are SUSTAINED with respect to all of the video recordings charges except those relating specifically to John King's and Tammy Drummond's depositions.

The following costs, totaling $5,640.00, will be allowed for videotapes of depositions:

| Deponent | Video Costs Allowed |
| --- | --- |
| Tammy Drummond (1) | $1,425.00 |
| Tammy Drummond (2) | $1,200.00 |
| John King (1) | $1,330.00 |
| John King (2) | $1,685.00 |

## D.    Witness Fees ($280)

SPI seeks $280.00 under 28 U.S.C. § 1920(3) and 28 U.S.C. § 1821 for expert witnesses SPI presented for deposition at the request of Relators.  Dkts. 640, 640-1.  The Relators do not object to these fees.  Dkt. 653.  Accordingly, costs for expert witness fees of $280 are APPROVED.

## E.    Fees for Exemplification and Costs of Making Copies ($46,955.31)

SPI seeks $46,955.31 for exemplification and the costs of making copies under 28 U.S.C. § 1920(4).  Dkt. 640.  SPI states that this amount is a fifty percent reduction of the $93,910.63 that it actually spent for making copies because it cannot provide a definitive number of reimbursable costs for its copies due to the large quantity of copies that were made for the convenience of SPI's counsel.  *See* Dkt. 640-1 ¶ 32.

Relators object to all the costs for exemplification and making copies because there is not enough information for the court to determine an appropriate percentage by which to reduce the costs.  Dkt 653.  Relators assert that even if the court determined that a percentage reduction is appropriate, SPI has not provided supporting testimony or evidence to suggest that fifty percent is

a reasonable estimation of the necessary costs.  *Id.*  Additionally, Relators point out that SPI has not reduced the copy fees for the costs of binders or other incidental costs.  *Id.*  Relators also take issue with a fee for copies made by Ms. Hasty, who they claim is an employee of SPI's counsels' firm and not associated with a third-party copy service.  *Id.*

SPI points out that the court has broad discretion to determine whether copies were reasonably necessary and is in the best position to understand the length and breadth of the losing party's litigiousness.  Dkt. 656.  SPI asserts that the vast scope of fact and expert discovery and the volume of dispositive and *Daubert* motion briefing make it impossible for SPI to describe in detail which documents were copied and when they were copied during the six years SPI and Relators were involved in active litigation.  *Id.*  SPI notes that it already reduced its copying costs by fifty percent of what its third-party copy service charges and that it is not seeking any of its in-house photocopying costs.  *Id.*  Additionally, SPI confirms that the Ms. Hasty listed on the photocopy exibits is a current or former employee of SPI's counsel's firm's Xerox contractor.  *Id.*

Relators rely on *Eastman Chemical Co. v. Plastipure, Inc.*, No. A-12-CA-057-SS, 2013 WL 5555373, at *7 , (W.D. Tex. Oct. 4, 2013) (Sparks, J.); *Honestech v. Sonic Solutions*, 725 F. Supp. 2d 573, 584 (W.D. Tex. 2010) (Sparks, J.), *aff'd*, 430 F. App'x 359 (5th Cir. 2011); and *Whirlpool Corp. v. LG Electronics, Inc.*, No. 104-CV-100, 2007 WL 2462659, at *3 (W.D. Mich. Aug. 26, 2007).  In *Eastman*, the prevailing party sought $12,456.13 in copying costs for its trial exhibits.  *Eastman*, 2013 WL 5555373, at *7.  The opposing party objected to these costs because the invoices did not specify what was being copied and the supporting affidavit merely recognized the difficulty in pinpointing what copies were necessary and requested one quarter of the total copying fees.  *Id.*  The court determined that "the evidence of these costs [was] simply too sparse for the Court to

16

determine whether the percentage counsel chose accurately represents the costs of [the prevailing party's] trial-related copies or whether those copies were necessary." *Id.* The court thus reduced the bill of costs by the entire amount requested for copies. *Id.*

Similarly, in *Honestech*, the bill of costs included a line item for photocopy expenses but did not provide any specific proof of the expenses. *Honestech*, 725 F. Supp. 2d at 584. The accompanying affidavit merely stated that ten percent of the black-and-white copies and forty percent of the color copies were "necessarily obtained for use in the case." *Id.* The court stated that it was impossible to determine "whether the printing costs claimed were actually necessary to the prosecution of [the] case" without more information and concluded that the supporting affidavit was "too conclusory to be of assistance." *Id.* The court held that it could not make a reasonable determination of the costs and disallowed all copying costs. *Id.*

In *Whirlpool*, the prevailing party sought $39,380.81 for photocopying costs. 2007 WL 2462659, at *1. The court acknowledged that § 1920 does not require page-by-page precision, but noted that the bill of costs should include a calculation that is "'reasonably accurate under the circumstances.'" *Id.* at *2 (quoting *Summit Tech., Inc. v. Nidek Co.*, 435 F.3d 1371, 1380 (Fed. Cir. 2006)). The court stated that the prevailing party identified the dates, amounts charged, and invoice numbers for the copying costs it requested, but it did not identify the nature of the documents or purpose of copying. *Id.* The prevailing party requested half of the costs incurred to account for copies that may not have been necessary. *Id.* The opposing party argued that the prevailing party had produced fewer than 68,700 pages and that at the rate of $.012 per page, that would amount to only $8,244.00, and allowing 2,000 pages for documents served on the opposing party would

17

increase the costs to just $8,500.00. *Id.* The court concluded that the prevailing party did not meet

its burden and adopted the opposing party's $8,500.00 figure. *Id.*

SPI relies on *Rundus v. City of Dallas, Texas*, 634 F.3d 309, 316 (5th Cir. 2011), *Fogleman*,

920 F.2d at 286, and *E8 Pharmaceuticals, LLC v. Affymetrix, Inc.*, No. 08-11132-GAO, 2014 WL

4964385, at *2 (D. Mass. Sept. 30, 2014). In *Rundus*, the Fifth Circuit noted that "'whether a

deposition or copy was necessarily obtained for use in the case is a factual determination to be made

by the district court'" and that the Fifth Circuit "'accord[s] great latitude to this determination.'" 634

F.3d at 316. The court instructed that costs that were incurred "'merely for discovery'" are not

"necessarily obtained for use in the case," but they are recoverable "if the party making the copies

has a reasonable belief that the documents will be used 'during trial preparation.'" *Id.* (quoting

*Fogleman*, 920 F.2d at 285–96).

In *Fogleman*, the prevailing party requested $2,419.12 for reproduction costs but did not

provide an itemized breakdown beyond distinguishing between those obtained in house and those

obtained from a copy service. 920 F.2d at 286. The court noted that it did "not expect a prevailing

party to identify every xerox copy made for use in the course of legal proceedings, [but it did] require

some demonstration that reproduction costs necessarily result[ed] from that litigation." *Id.* It

instructed that costs should not be assessed for "multiple copies of documents, attorney

correspondence, or any other multitude of papers that may pass through a law firm's xerox

machines," and it remanded the case to the district court to determine which copy costs were

necessarily incurred. *Id.*

In *E-8 Pharmacueticals, LLC*, the prevailing party provided a list of copies made by its firm

in connection with the litigation that included the date, who made the copies, and how may pages

were copied.  2014 WL 4964385, at *2.  The court noted a case in which the Federal Circuit had determined that a fifty percent reduction was appropriate in such circumstances because it was impossible to keep track of each page copied in a complex patent case and determined that a fifty percent reduction was appropriate in the *E-8 Pharmaceuticals* case as well.  *Id.* (citing *Summit Tech., Inc. v. Nidek Co.*, 435 F.3d 1371, 1378–79 (Fed. Cir. 2006)).

In this case, the invoices provided are not detailed.  However, the supporting affidavit states that SPI's defense included witness and exhibit preparation for 32 deponents and 46 volumes of production comprised of approximately 1,784,622 documents on 2,903,765 pages.  Dkt. 640-1.  SPI points out that this included the work of six testifying experts and a consulting expert and briefing associated with two motions to dismiss, nine motions for summary judgment, and six *Daubert* motions.  *Id.*  SPI's counsel attests that the photocopying costs requested were necessarily incurred for these and other case-related activities.  *Id.*  SPI asserts that it is not seeking any fees for printing or copying done by any non-contractor employees of its counsel's firm.  *Id.*  Additionally, it seeks only fifty percent of the costs to account for any copies that may have been made for the convenience of counsel.  *Id.*

The court certainly understands Relators' concern that some of the copies may have been made for the convenience of the parties or include ancillary costs that are not allowed.  However, the court agrees with SPI that it would be impossible in this complex case for SPI to justify each copy when the case involved 2,903,765 pages.  Most of those pages have passed through this courthouse.  The court notes SPI's assertion that the copying costs sought were "necessarily incurred" and finds that, particularly given the reduction of fifty percent of the costs incurred and the fact that SPI is not seeking costs for copies made by its employees (other than contractors), that the

costs it seeks are reasonable and were necessary. Relators' objection is OVERRULED and the court APPROVES costs of $46,955.31 for exemplification and costs of making traditional copies.

## F.   E-Discovery ($788,240.87)

SPI seeks costs associated with e-discovery that it claims were necessary to fulfill its discovery obligations and defend itself in this litigation. Dkt. 656. It contends that these costs for electronic services are "the modern equivalent of the 'copies' originally contemplated by [§ 1920(4)]." *Id.* SPI requests costs for the digitization of hardcopy documents to an electronic format, costs associated with the production of electronic documents, and costs related to the production and maintenance of the electronic discovery exchanged. Dkt. 640-1. It contends that it was required to search through and produce documents from approximately one hundred custodians in response to the six rounds of document requests Relators made. *Id.* It asserts that it is entitled to the costs related to the production and maintenance of these documents as electronic "exemplifications and copies" under § 1920(4). *Id.* The fees it seeks include fees for technical services by an e-discovery vendor, including project management fees, processing services, post processing services, TIFF image conversion fees, native processing, technical services, data loading, scanning, OCR, logical unitization, backup tape restoration, technical time, image endorsement, PDF conversion, hard drive and disk media, and conversion from VHS to DVD. *Id.* It also seeks user fees charged by the e-discovery vendor of $60,750.00 a month from May 2013 through March 2016 and storage fees of $29,964.95. *Id.* Additionally, SPI seeks to recover $483.52 for hard drives sent by SPI's counsel to produce electronic files to Relators. *Id.* SPI states that it has not sought the costs of hardware used internally, sent to its e-discovery vendor, or used for convenience of counsel, witnesses, or experts. *Id.* SPI notes that it has submitted itemized monthly invoices from its e-

discovery service provider that categorizes whether the charge is for production, access and maintenance, or review or miscellaneous costs. Dkt. 656. SPI contends that recoverable costs are those that are production or access related. *Id.* The e-discovery and hard drive costs sought total $788,240.87. Dkt. 640-1. SPI notes that it excluded $1.2 million in e-discovery expenditures that did not relate to production or access and maintenance. Dkt. 656.

Relators assert that vendor costs, metadata preservation, searching, and production costs are not taxable and that, regardless, SPI fails to discuss the necessity of any of the e-discovery charges to specific documents, production, or exhibits. Dkt. 653. Relators acknowledge that SPI contends that it was more cost effective to use e-discovery methods than photocopying all of the documents, but they argue that the court should not allow any costs for e-discovery because § 1920(4) does not support taxation for activities merely because they are cost effective. *Id.* Additionally Relators contend that even if the court were to allow some e-discovery costs, SPI fails to show that they were necessary in this case. *Id.* Relators point out that § 1920(4) allows parties to recover costs for printing and making copies, and neither of these activities are directly analogous to processing fees paid to third-party providers to digitize large quantities of print materials or compile and convert electronic records. *Id.* Relators also discuss various subcategories of e-discovery costs that should not be allowed. *Id.*

The court will consider the various subcategories of e-discovery for which SPI seeks costs after first painting a broad picture of whether courts allow these types of costs in general. In *United States ex rel. Long v. GSDMidea City. L.L.C.*, 807 F.3d 125, 131–32 (5th Cir. 2015), the Fifth Circuit considered whether to award costs for TIFF conversion. 807 F.3d at 131. The party objecting to the bill of costs objected to awarding any discovery-related costs and argued that the

21

court should not award any costs related to conversion and character recognition because the objecting party had agreed to production in native format. *Id.* The Fifth Circuit noted that there is not yet uniformity amongst the circuits regarding which types of e-discovery costs are recoverable under the most recent version of § 1920(4), which includes the costs of making copies necessarily obtained to use in the case and contains no bar to taxing the costs of electronic copies. *Id.* at 131–32; *see also Colosi v. Jones Lang LaSalle Ams., Inc.*, 781 F.3d 293, 296 (6th Cir. 2015). The Fifth Circuit did not reach any conclusions because it found there was "no abuse of discretion in the district court's award of conversion and character recognition costs" because the prevailing party had attested that these costs were necessary for the case, had not requested all the e-discovery costs it incurred, and provided invoices with descriptions of the costs, and the objecting party did not specify which of the costs it opposed. *Long*, 807 F.3d at 132.

Here, unlike in *Long*, Relators raise specific objections to the e-discovery costs SPI seeks. Several other circuits have squarely addressed whether § 1920(4) covers various types of e-discovery costs, and these cases provide some guidance for the e-discovery issues in the instant case. In *Colosi*, the Sixth Circuit affirmed an award of costs for imaging hard drives under § 1920(4), finding that "[i]maging a hard drive falls squarely within the definition of 'copy,' which tellingly lists 'image' as a synonym." *Colosi*, 781 F.3d at 297. In *Country Vintner*, the Fourth Circuit similarly noted that a "copy" is "'an imitation, transcript, or reproduction of an original work,'" and that "'making copies' means producing imitations or reproductions of original works." *Country Vintner of N.C., LLC v. E. & J. Gallo Winery, Inc.*, 718 F.3d 249, 259–61 (4th Cir. 2013). However, it noted that while the "ordinary meaning of the phrase is expansive," § 1920's application should be "'modest in scope'" and "'limited to relatively minor, incidental expenses.'" *Id.* (quoting *Taniguchi*

*v. Kan Pacific Saipan, Ltd.*, 132 S. Ct. 1997, 2006 (2012)) and citing *In re Total Realty Mgmt., LLC*, 706 F.3d 245, 251 (4th Cir. 2013)).  The Fourth Circuit ultimately affirmed an award of costs for converting native files to TIFF and PDF formats and transferring the copies to CDs under § 1920(4), but limited the remainder of the prevailing party's electronically stored information ("ESI") processing charges.  *Id.*

In *Race Tires*, the Third Circuit determined that only scanning of hard copies, conversion of native files to TIFF, and transferring VHS tapes to DVD was taxable as copying under § 1920(4). *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158, 171 (3d Cir. 2012).  The Third Circuit noted that "[n]either the language of § 1920(4), nor its history, suggests that Congress intended to shift all the expenses of a particular form of discovery—production of ESI—to the losing party.  Nor can such a result find support in Supreme Court precedent, which has accorded a narrow reading of the cost statute in other contexts."  *Id.* (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 442, 107 S. Ct. 2494 (1987)).

In *CBT Flint Partners, LLC*, the Federal Circuit noted that other circuits had interpreted § 1920(4) as allowing "for only limited recovery of the costs of electronic-document production." *CBT Flint Partners, LLC v. Return Path, Inc.*, 737 F.3d 1320 (Fed. Cir. 2013).  It noted that the Third Circuit, in *Race Tires*, "put hard-drive imaging and metadata extraction in the same category as unrecoverable preparatory activities such as searching, reviewing for responsiveness, and screening for privilege."  *Id.* at 1333 (citing *Race Tires*, 674 F.3d at 169–70).  The Federal Circuit, however, determined that "imaging a source drive and extracting requested data where the extracted data are included in the discovery request" is more like "making copies" than "attorney and paralegal review" and determined that there "was not good reason, as a default matter, to distinguish between

23

copying one part of an electronic document (i.e., the part that is visible when printed) from copying other parts (i.e., parts not immediately visible) when both parts are requested." *Id.*

The Ninth Circuit recently addressed whether a district court erred in broadly construing §1920(4) and taxing e-discovery and data management costs totaling $317,616.69. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 914, 925–30 (9th Cir. 2015). The Ninth Circuit discussed the history of § 1920(4) and elected to interpret it narrowly, noting that "the circumstances in which a copy will be deemed 'necessarily obtained' for use in a case will be extremely limited." *Id.* at 930. The court concluded that the "proper application of a narrowly construed § 1920(4) requires that the tasks and services for which an award of costs is being considered must be described and established with sufficient specificity, particularity, and clarity as to permit a determination that costs are awarded for making copies." *Id.* at 928. In that case, there was a charge for data upload, which involved reproducing the documents for viewing in the required formats with the required labels. *Id.* at 929. The court noted that the data upload is "akin to the paper-document analogue of faxing a document from the client site to the law firm, a process which involves the transmitting of data from location to location and which also results in a facsimile copy of the original document." *Id.* The court ultimately allowed only "costs attributable to optical character recognition, converting documents to TIFF, and 'endorsing' activities—all of which [were] explicitly required by [the objecting parties]." *Id.*

The court tends to agree with the circuits that have interpreted § 1920(4) more narrowly, though it agrees with the Federal Circuit that if the opposing party has requested metadata, then the costs of "copying" that metadata should be recoverable. The court will now consider all of Relators' objections in light of these principles.

24

### 1.   E-Discovery Project Management ($52,470)

In its supporting affidavit, SPI places most of the costs it seeks for e-discovery in the broad "technical services" category, and it contends that the items listed in this category were necessary to generate the image, native, and metadata files which comply with generally acceptable production practices and the instructions set out by Relators in their requests for production. Dkt. 640-1. The first item in this category is "project management," for which SPI seeks costs amounting to $52,470.00. *Id.* Relators contend that there is no description of why project management costs were necessary and if project management relates to supervision, it is not recoverable. Dkt. 653. SPI does not specifically address project management in its response to Relators' objections. Dkt. 656. Instead, it discusses the broad technical services category as it was described in the supporting affidavit. *Id.* The court finds that SPI has not met its burden of showing that project management is sufficiently analogous to making copies to be a recoverable cost under § 1920(4). The objection to the fee for project management is SUSTAINED.

### 2.   Processing Services ($6,071.25)

SPI next lists processing services amounting to $6,071.25 under the paragraph describing the technical services that it asserts were essential to collect, review, and produce documents. Dkt. 640-1. Relators object that SPI does not explain why processing services is a necessary cost or which services were necessary to making copies or exemplifications for this case. Dkt. 653. Relators assert that "processing services" is a vague term and that it is unclear what was processed or how it could possibly relate to documents being copied. *Id.* Relators point out that the Fourth Circuit, in *Country Vintner*, did not allow costs for "ESI processing," because the services leading up to copying do not

constitute "making copies." *Id.* (citing *Country Vintner of N.C.*, 718 F.3d at 261).  This court agrees with the Fourth Circuit.  The objection to the fee for processing services is SUSTAINED.

### 3.      Post Processing Services ($18,641.25)

SPI next requests fees for post processing services amounting to $18,641.25.  Dkt. 640-1. Again, SPI does not explain what these services entailed other than listing them under the broad category of technical services.[5]  *See id.*  Like with processing services, SPI has not met its burden of showing that post processing services is "copying."   Relators' objection to post processing services is SUSTAINED.

### 4.      TIFF Image Conversion ($23,632.21)

SPI requests $23,632.21 for TIFF Image Conversion.  Dkt. 640-1.  It also places this request in the broad category of technical services.  *See id.*  Relators object to this cost because they assert that SPI has not indicated which conversions took place and which exemplifications were necessarily obtained for use in the case.  *Id.*  However, the court finds that, given the complexity of this case, the number of documents involved, and the time span encompassed, that SPI has met its burden with regard to the image conversion fee, which is a technical service that SPI asserts was necessary to respond to Relators' discovery requests.  *Id.*  Relators' objection to the fee for TIFF image conversion is OVERRULED, and costs of $23,632.21 shall be taxed.

---

[5]  SPI does note, in a footnote, that it "would be pleased to provide a list of technical term definitions or a declaration from its e-discovery vendor addressing any questions the Court may have."  Dkt. 656 at 10 n.9.  While the court agrees that it may grant leave to submit further documentation, it declines to exercise its discretion to do so.  SPI has had sufficient time to obtain and submit additional information if such information would have been useful in fulfilling SPI's burden.

### 5.      Native Processing ($6,314.75)

SPI requests $6,314.75 for "native processing," which it contends is also a technical service. Dkt. 640-1.  SPI specifically notes that the native files were necessary to comply with the instructions set forth in Relators' discovery requests.  *Id.*  Relators contend that SPI does not explain why native processing is a cost necessary to the case or which copies required native processing, and they contend that the term is so vague and technical that they cannot possibly defend against the necessity of the cost.  Dkt. 653 (citing *Race Tires*, 674 F.3d at 167).  While the court does not necessarily agree that the term is overly technical, SPI has not explained what type of processing was needed and how it relates to making copies.  Since SPI has not met its burden of showing these costs are recoverable, Relators' objection is SUSTAINED.

### 6.      Technical Services ($28,961.25)

SPI next lists "technical services" amounting to $28,961.25 in its broad category of technical services that it contends were necessary to generate the image, native, and metadata files for production.  Dkt. 640-1.  Relators argue that SPI merely asserts in a conclusory fashion that these services were necessary for production, and, analogizing to paper copies, Relators point out that courts would not tax costs for "the process of production." Dkt. 653.  Relators note that if "technical services" is akin to the costs a technician charges to make a printer work, the costs are not taxable. *Id.*  The court agrees that SPI has not met its burden of showing that technical services is a recoverable cost, as § 1920(4) does not necessarily include "all steps that lead up to the production of copies of materials."  *Race Tires*, 675 F.3d at 171.  Relators' objection to the costs of "technical services" is SUSTAINED.

### 7.    Data Loading ($16,742.80)

SPI seeks $16,742.80 for data loading. Dkt. 640-1.  Relators object to this cost because SPI has not sufficiently indicated it is necessary and because the term is vague.  Dkt. 653.  The court agrees that there is no explanation of what data loading is.  Additionally, other cases seem to indicate that data loading is a service used to prepare files for conversion and is not a recoverable cost.  *See Life Plans, Inc. v. Sec. Life of Denver Ins. Co.*, 52 F. Supp. 3d 893, 902 (N.D. Ill. 2014) ("In this circuit, a majority of courts have adopted reasoning similar to *Race Tires* and *Country Vintner* to deny recovery of the costs for services—such as data loading, data processing, de-duplication, and culling—used in preparing ESI for conversion into a readable file format.").  Relators' objection to the costs for data loading is SUSTAINED.

### 8.    Scanning ($109,220.32)

SPI seeks $109,220.32 for scanning, which it also lists as a technical service.  Dkt. 640-1. Relators object to the cost for scanning, which they acknowledge is "potentially taxable," because SPI did not specify which documents it scanned that were necessary for the case.  Dkt. 653. However, SPI stated that all of the items listed in its technical services category were necessary to generate files that were in compliance with Relators' requests for production, and it outlined how extensive those requests were when discussing regular copying and why it was impossible to keep up with exactly which documents were copied when.  The court finds, given the complexity of this case, the number of documents involved, and the time span encompassed, that SPI has met its burden with regard to the scanning fee.  *Id.*  Relators' objection to the scanning fee is OVERRULED, and costs of $109,220.32 shall be taxed.

28

### 9.    OCR Costs ($6,063.56)

SPI requests $6,063.56 for OCR Costs.  Dkt. 640-1.  These are also listed in the technical

services category.  *See id.*  Relators object to the OCR costs because SPI has not shown that it was

necessary to making copies.[6]  Dkt. 653.  In *Life Plans*, the court noted that in that case OCR was

simply used to make documents searchable, which is not the same as making copies, and determined

that OCR was not necessary to the production of documents.  52 F. Supp. 3d at 902.  The court

agrees with this general assessment.  However, SPI asserts that the items in its technical services

category, including OCR Costs, were necessary to produce documents in compliance with the

requests in Relators' requests for production.  Dkt 640-1.  In *Fast Memory Erase, LLC v. Spansion,

Inc.*, the federal district court for the Northern District of Texas noted that the objecting party had

specifically stated it preferred production of individual TIFFs with OCR text.  *Fast Memory Erase,

LLC*, No. 3-10-CV-0481-M-BD, 2010 WL 5093945, at *5 (N.D. Tex. Nov. 10, 2010).  The court

thus allowed the costs for creating the TIFF/OCR images.  *Id.*  It appears that Relators requested

OCR text here, and SPI should not be burdened with the expense of producing "copies" in the format

requested by Relators.  Relators' objection to "OCR Costs" is OVERRULED and "OCR Costs" of

$6,063.56 shall be taxed.

### 10.    Logical Unitization ($15,860.14)

SPI seeks $15,860.14 for logical unitization.  Dkt. 640-1.  Relators object to these costs

because SPI has not shown what "logical unitization" is or why it was necessary.  Dkt. 653.  Relators

note, relying on prior caselaw, that SPI may mean the creation of documents for e-discovery.  *Id.*

---

[6] Relators note that "OCR" stands for "optical character recognition" and that "OCR is the process by which a PDF file or TIFF document becomes text searchable."  Dkt. 653.

(citing *Race Tires*, 674 F.3d at 171).  Relators point out, however, that this is similar to filing documents in a filing cabinet and is not a recoverable cost.  *Id.*  The court agrees that SPI has not met its burden of describing what the phrase "logical unitization" is and why it should be considered part of making copies under § 1920(4).  Relators' objection to the logical unitization cost is SUSTAINED.

### 11.    Backup Tapes Restoration ($7,500.00)

SPI requests $7,500.00 for backup tape restoration, which it places in the technical services category.  Dkt. 640-1.  Relators object to the entire amount, asserting that backup tapes restoration is akin to searching through warehouses for relevant documents and is not taxable.  Dkt. 653.  They cite *Race Tires* in support of this position.  In *Race Tires*, the Third Circuit discussed the multi-step process of complex litigation in the pre-digital era.  *Race Tires*, 674 F.3d at 169.  It noted that the paper files had to be located, collected, reviewed for relevancy, culled, and screened for privilege, and pointed out that none of these steps were taxable because Congress did not authorize taxation of charges for discharging normal discovery obligations.  *Id.*  Instead, Congress authorized taxation of the cost of making copies of the documents after all of these other steps were completed.  *Id.*  This court agrees with the Third Circuit's reasoning.

SPI has not provided any argument or authorities indicating that backup tape restoration should be considered a copying or exemplification cost.  It has therefore not met its burden under § 1920.  Relators' objection to the cost for backup tape restoration is SUSTAINED.

### 12.    Technical Time ($242.50)

SPI seeks $242.50 for technical time.  Dkt. 640-1.  Relators object that SPI has not explained what the term "technical time" is or what relation it has to copies produced for use in this case.

Dkt. 653.  Relators point out that the term "technical time" may be a synonym for "technical services" and that it cannot be charged for the same reasons.  *Id.*  The court agrees that SPI has not met its burden with regard to its request for the cost billed as technical time.  Relators' objection to this cost is SUSTAINED.

### 13.    Image Endorsement ($698.47)

SPI's next cost, $698.47, is image endorsement.  Dkt. 640-1.  This is also in the technical services category.  Relators contend that SPI has not shown how image endorsement is necessary to the case or making copies and that the term "image endorsement" is a technical term.  Dkt. 653.  Relators note that there is a case in the Ninth Circuit that allowed costs for image endorsement, which the court noted was the "'branding of image files with unique sequential production numbers and confidentiality designations.'"  *Id.* (quoting *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 914, 930 (9th Cir. 2015)).  However, the Ninth Circuit did not consider the substantive aspects of whether endorsing activities qualified as "copying" because the matters were not argued in the objecting party's opening brief.  *In re Online DVD Rental Antitrust Litig.*, 779 F.3d at 930.  Relators point out that the endorsing activities discussed by the Ninth Circuit are similar to numbering pages in an exhibit and are nonrecoverable processing costs.  *Id.*  The court agrees that SPI has not met its burden of demonstrating that "image endorsement" is a recoverable cost.  Relators' objection is SUSTAINED.

### 14.    PDF Conversion ($508.90)

SPI requests $508.90 for PDF conversion.  Dkt. 640-1.  Relators object to the cost because SPI has not pointed out which documents were necessarily converted to PDFs.  Dkt. 653.  However, the court finds that, given the complexity of this case, the number of documents involved, and the

time span encompassed, that SPI has met its burden with regard to PDF conversion.  *See* Dkt. 640-1 (discussing why it was impossible to pinpoint which documents were copied and why).  Relators' objection to the cost of PDF conversion is OVERRULED, and $508.90 shall be taxed.

### 15.    Hard Drive and Disk Media ($1,620.00)

SPI requests $1,620.00 for hard drive and disk media.  Dkt. 640-1.  This cost is listed in the technical services category.  *See id.*  Relators object to $1,136.00 of the hard drive and disk media cost because only $483.52 in hard drives and disks were produced to Relators.  Dkt. 653.  SPI clarifies that it is seeking $483.52 for eleven hard drives acquired internally for purposes of copying and transmitting its document productions and $1,620.00 for nine items of digital media acquired from its electronic discovery provider for the same purposes.  Dkt. 656 (citing the exhibits located at Dkt. 640-6 and 640-7, which document these costs).  SPI concedes, however, that two of the hard drives and DVDs were not likely used for production and therefore reduces its request in this category to $1,050.00.  *Id.*  The court finds that these costs for hard drives and disks were necessary for production and are taxable, OVERRULES Relators' objection, and holds that $1,050.00 will be taxed for hard drive and disk media.

### 16.    Convert VHS to DVD ($495.00)

SPI requests $495.00 for costs associated with converting VHS to DVD.  Dkt. 640-1. Relators object to this cost, asserting that SPI has not demonstrated that it produced any DVDs and Relators are not aware of any DVDs.  Dkt. 653.  SPI does not address this contention in its response to Relators' objection.  *See* Dkt. 656.  While this case was indeed complex, given the low amount of this fee, the court finds that it should not have been overly burdensome to determine what tapes

were converted to DVD.  SPI has not met its burden with regard to this charge.  Accordingly, Relators' objection to the cost for converting VHS to DVD is SUSTAINED.

### 17.    Monthly User Fee and Storage Fee ($60,750.00 and $429,964.95)

The next category of costs requested by SPI is for the processing, organization, and maintenance of the electronic data exchanged in the litigation.  Dkt. 640-1.  It notes that the 3,000,000 pages of documents in this litigation were too voluminous to maintain in hardcopy format, so it maintained the files electronically.  *Id.*  It seeks monthly user fees amounting to $60,750.00 and storage fees amounting to $429,964.95.  *Id.*  Relators object to these costs, arguing that they are not for copying or exemplification and are merely for the convenience of SPI's counsel.  Dkt. 653.  SPI takes issue with Relators' argument that the use of an electronic system was for the convenience of counsel, asserting that it is "out of step with the realities of document discovery in this digital era."  Dkt. 656.

The court agrees that SPI likely needed to maintain this database for some time to produce the documents requested by Relators.  However, § 1920(4) has been interpreted narrowly by courts and applies only to "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case."  28 U.S.C. § 1920(4).  It does not cover all *discovery*, it covers *exemplification* and *making copies*.  SPI notes that the purpose of the requested costs for monthly user fees and storage fees was to "assist with the processing, organization, and maintenance of the electronic data exchanged."  Dkt. 640-1.  While this certainly helped with discovery in this complex case, it is not exemplification or making copies.

The cases SPI cites either miss this distinction or do not actually cover the types of costs SPI is seeking here.  The only binding precedent SPI cites is *Long*.  In *Long*, the Fifth Circuit did not

allow enormous fees associated with maintaining and storing electronic data during the lifespan of a case. It simply found no abuse of discretion when the district court allowed costs for TIFF conversion and character recognition, which is completely different than fees for the maintenance and storage of electronic documents. *See Long*, 807 F.3d at 131–32. SPI also cites two district court cases from Oregon, one from Pennsylvania, and one from the Western District of Texas. *See* Dkt. 640-1 ¶ 27; Dkt. 656. The court will discuss the Western District of Texas case, which is somewhat more persuasive authority than the cases from outside of the Fifth Circuit.

In the Western District of Texas case, the prevailing party requested $27,171.88 in "other costs" for the cost of an electronic database. *Chenault v. Dorel Indus., Inc.*, No. A-08-CA-354-SS, 2010 WL 3064007, at *3 (W.D. Tex. Aug. 2, 2010). The court noted that the prevailing party used the database to produce 800,000 pages of emails electronically and saved printing and copying costs by doing so. *Id.* at *4. The court granted these costs under § 1920(3), finding that they were allowable because using the database allowed the prevailing party to save costs by not printing the documents. *Id.*

First, the court finds it noteworthy that the *Chenault* court considered the database cost under § 1920(3), not § 1920(4). Here, SPI is contending that it is entitled to these costs because they were needed to "copy" the discovery request. In *Chenault*, Judge Sparks considered whether it was appropriate to award the costs because it saved a substantial amount of what would otherwise be "printing" costs. The court finds *Vital v. Varco*, 2015 WL 7740417, at *5, which was decided in this district, more on point and more persuasive. In *Vital*, Judge Rosenthal notes that *Chenault* was decided before *Race Tires* and *Country Vintner*, which both focused on the statutory language of § 1920. *See Vital*, 2015 WL 7740417, at *5. Judge Rosenthal points out that the *Chenault* court

34

cited policy reasons for allowing the costs rather than focusing its analysis on the meaning of "printing" in § 1920(3) or "copying" in § 1920(4). *Id.* She then observed that the tasks of the third-party vendor

> "do not appear to be electronic equivalents of exemplification and copying. Rather, these steps appear to be the processing of tapes to locate, retrieve, and store information that might be responsive to a production request. The steps of extracting data from an electronic medium and storing that data for possible use in discovery is more like the work of an attorney or legal assistant in locating and segregating documents that may be responsive to discovery than it is like copying those documents for use in a case. The extraction and storage did not involve certification of public documents or the preparation of demonstrative exhibits. Nor does [the cost applicant] assert that the extraction of storage involved electronically scanning information to be produced in electronic form. [The costs] are not within the 'exemplification and copying' category of § 1920."

*Id.* (quoting *Kellogg Brown & Root Int'l, Inc. v. Altanmia Commercial Mktg. Co. WLL*, No. H-07-2684, 2009 WL 1457632, at *5 (S.D. Tex. May 26, 2009) (Rosenthal, J.)). This court agrees completely.[7] The statute applies to exemplification and copying. It is Congress's place, not the

---

[7] The court acknowledges that the three cases SPI cites from district courts outside of the Fifth Circuit provide some support for SPI's position, but the court does not find these cases persuasive. *See Pacificorp v. Nw. Pipeline GP*, No. 3:10-cv-00099-PK, 2012 WL 6131558, at *7 (D. Or. Dec. 10, 2012) (considering whether data storage costs are taxable and determining that "the storage of electronic data throughout this process is obviously required to prepare and produce the requested electronic discovery, requires no intellectual efforts, and may be properly taxed under § 1920(4), but not discussing whether these costs should actually qualify as "copying" or "exemplification"); *In re Aspartame Antitrust Litig.*, 817 F. Supp. 2d 608, 615 (E.D. Pa. Oct. 5, 2011) (allowing costs for the "creation of a litigation database, storage of data, imaging hard drives, keyword searches, deduplication, data extraction, and processing" as well as a privilege screen and hosting because of the complexity of the case and overall savings associated with electronic as opposed to paper discovery); *Adidas Am., Inc. v. Payless Shoesource, Inc.*, No. 01-1655-KI, 2009 WL 302246, at *6 (D. Or. Feb. 9, 2009) (noting, in the context of whether costs to put data on CDs should be taxed, that we "are well past the day when all copies are basic photocopies" and that the "electronic storage of documents, especially when they are numerous, allows a more efficient way to litigate the case and to present the evidence at trial," but not addressing costs associated with maintaining electronic files on a database for the life of the case).

judiciary's, to expand the reach of the statute to account for changing practices associated with electronic discovery—if Congress believes such a change is appropriate. Relators' objections to the costs requested for the monthly user fee and storage fee charged by SPI's third-party electronic discovery vendor are SUSTAINED.

### G.     Email Recovery Performed by D4 Discovery, LLC ($27,212.86)

Finally, SPI seeks costs associated with the recovery of e-mail data contained on back-up tapes. Dkt. 640-1. It notes that the parties agreed to share the costs of recovering these emails, but it now seeks to tax its $27,212.86 share of the restoration costs, which it claims are analogous to the fees for making copies allowed under § 1920(4). *Id.* Relators object to this cost. Dkt. 653. Relators contend that SPI is seeking to "renege" on the agreement they made to split these costs and that, regardless, the costs fall outside of § 1920. *Id.* Additionally, Relators take issue with what they consider ancillary costs contained in the invoices for litigation support, cataloguing, indexing, searching, restoration, data reduction, supplies, media or disk storage, and shipping. *Id.* SPI argues that the parties procured the restoration of tapes at Relators' request, and it ultimately produced documents associated with the agreed custodians on the tapes. Dkt. 656. In addition, the fact that it agreed to pay at the time does not preclude it from asking to be reimbursed now. *Id.*

Apparently, an agreement was made during discovery to split these costs. There is no evidence that the agreement included a caveat that the prevailing party would be able to recover its share of these costs later. Accordingly, the court finds that these costs are not recoverable because the parties agreed to a different arrangement. Additionally, SPI has not sufficiently discussed why restoration is analogous to making copies or provided the court with authority showing the similarity. Relators' objection to the D4 Discovery invoices is SUSTAINED.

## IV. CONCLUSION

Relators' objections are SUSTAINED IN PART AND OVERRULED IN PART as follows:

(1) The objection to $170 of the costs for hearing transcripts is OVERRULED.  The clerk shall tax **$533.05** for hearing transcripts costs.

(2) The objection to all written deposition costs, totaling $52,734.59, is SUSTAINED IN PART and OVERRULED IN PART.  The clerk shall tax **$38,926.57** for written deposition costs.

(3) The objection to all videotaped deposition recording costs, totaling $47,523.83, is SUSTAINED IN PART and OVERRULED IN PART.  The clerk shall tax costs of **$5,640.00** for videotaped deposition costs.

(4) The objection to copying costs is is OVERRULED.  The clerk shall tax costs of **$46,955.31** for exemplification and costs of making traditional copies.

(5) The objection to e-discovery costs of $788,240.87 is SUSTAINED IN PART and OVERRULED IN PART as follows:

(a)    The objection to $52,470 for project management is SUSTAINED.

(b)    The objection to $6,071.25 for processing services is SUSTAINED.

(c)    The objection to $18,641.25 for post processing services is SUSTAINED.

(d)    The objection to $23,632.21 for TIFF image conversion is OVERRULED.  The clerk shall tax costs of **$23,632.21** for TIFF image conversion.

(e)    The objection to $6,314.75 for native processing is SUSTAINED.

(f)    The objection to $28,961.25 for technical services is SUSTAINED.

(g)    The objection to $16,742.80 for data loading is SUSTAINED.

(h)     The objection to $109,220.32 for scanning is OVERRULED.  The clerk shall tax costs of **$109,220.32** for scanning.

(i)     The objection to $6,063.56 for OCR costs is OVERRULED.  The clerk shall tax **$6,063.56** for OCR.

(j)     The objection to $15,860.14 for logical unitization is SUSTAINED.

(k)     The objection to $7,500.00 for backup tape restoration is SUSTAINED.

(l)     The objection to $242.60 for technical time is SUSTAINED.

(m)     The objection to $698.47 for image endorsement is SUSTAINED.

(n)     The objection to $508.90 for PDF conversion is OVERRULED.  The clerk shall tax **$508.90** for PDF conversion.

(o)     The objection to $1,136.00 of the $1,620.00 originally requested for hard drive and disk media is SUSTAINED IN PART AS UNOPPOSED and OVERRULED IN PART.  It is SUSTAINED as to the $570 that SPI concedes were not likely used for production.  It is otherwise OVERRULED.  The clerk shall tax costs of **$1,050.00** for hard drive and disk media.

(p)     The objection to $495.00 to convert VHS to DVD is SUSTAINED.

(q)     The objections to the costs requested for the monthly user fee and storage fee charged by SPI's third-party electronic discovery vendor of $60,750.00 and $429,964.95 are SUSTAINED.

(6)     Relators' objection to $27,212.86 of costs for recovery of email data by D4 Discovery is SUSTAINED.

Relators did not object to the **$280** requested for witness fees.  Accordingly, the clerk shall tax costs of $280 for witness fees.

In total, after resolving all objections, the clerk shall tax costs of **$232,809.92**.

Signed at Houston, Texas on June 28, 2016.

_____
Gray H. Miller
United States District Judge